THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

_____ DIVISION

No. 1:09-CV-479

| | |
|---|---|
| FEN-PHEN SERIES 2005-01, a series of CAP TRAN FUNDING, LLC, ) ) ) | |
| Plaintiff, ) ) ) | COMPLAINT |
| vs. ) ) | JURY TRIAL DEMANDED |
| JAMES S. FARRIN, P.C. ) ) | |
| Defendant. ) | |

Plaintiff Fen-Phen Series 2005-01, complaining of defendant alleges and says:

## **THE PARTIES**

1. Plaintiff Fen-Phen Series 2005-01 ("Plaintiff") is a series of Cap Tran Funding, LLC which is a Delaware series limited liability company existing under the laws of the State of Delaware with a principal place of business in Florida.

2. Defendant James S. Farrin, PC is a North Carolina professional corporation with its principal place of business located in Durham County, North Carolina.

## II.     **JURISDICTION AND VENUE**

3. Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over this action because this is a civil matter between citizens of different states wherein the amount in controversy exceeds $75,000.00, exclusive of interest and costs. This Court has authority to adjudicate this matter and to declare the respective rights, duties, and obligations of the parties pursuant to 28 U.S.C. § 2201.

{00009827.DOC}

4. Venue is proper in this district under 28 U.S.C. § 1391(a). Venue is proper under 28 U.S.C. § 1391(a) because defendant is deemed to be a resident of this judicial district for venue purposes, and a substantial part of the events or omissions giving rise to the claims at issue here occurred within this judicial district.

5. Plaintiff has complied with all conditions precedent to the bringing of this action and all claims asserted herein.

## FACTS

6. On or about January 27, 2005, Capital Transaction Group, Inc. entered into a Loan and Security Agreement with McEachin Law Firm, P.C. ("McLaw"). A true and accurate copy of this agreement is attached hereto as Exhibit A and is hereinafter referred to as the "Fen-Phen Agreement."

7. Pursuant to the Fen-Phen Agreement, Capital Transaction Group, Inc. loaned McLaw $1,300,000.00 secured by a promissory note and security interest in McLaw's accounts including its anticipated legal fees from a class action products liability law suit against Wyeth, Inc. related to the diet drugs Pondimin and Redux. As additional terms of the Fen-Phen Agreement, in paragraph 9, McLaw agreed not to: "Sell or otherwise dispose of any of its property or assets or create, assume, or allow to exist any lien on any of its property or assets, other than the lien in favor of [Capital Transaction Group, Inc.] contemplated by this Loan Agreement."

8. In addition to the requirements stated above, the Fen-Phen Agreement entitled Capital Transaction Group, Inc. to certain financial and status reports from McLaw.

9. Paragraph 10 of the Fen-Phen Agreement defines a number of events of default under the agreement. One such event of default is defined in paragraph 10(k) as follows:

> "<u>Material Adverse Change</u>. A material adverse change shall occur in the condition (financial or otherwise), business, property or prospects of Borrower or Guarantor."

10. As part of the Fen-Phen Agreement, McLaw's president, A. Donald McEachin ("McEachin"), personally guaranteed McLaw's performance under the Fen-Phen Agreement.

11. In late 2005, it became apparent that McLaw would default on the payment obligations under the Fen-Phen Agreement and Capital Transaction Group, Inc. and McLaw began negotiations to give Capital Transaction Group, Inc. additional collateral for the amounts owed under the Fen-Phen Agreement.

12. It was at this time that McEachin raised the possibility of generating additional collateral from the expected legal fees from a new series of cases for later filers in the federal class action lawsuit, <u>Pigford v. Glickman</u>. (the "Pigford Litigation").

13. The Pigford Litigation is a class action civil rights case brought by black farmers who were denied loans and subsidies by the United States Department of Agriculture due to racial discrimination. The original claims process for the Pigford Litigation was established in 1998 and closed in October 11, 1999. However, 70,000 claims were rejected as incomplete or filed after the filing deadline.

14. McLaw formed a partnership with Donald Gee organized as McEachin and Gee Attorneys at Law, LLP, Virginia Limited Liability Partnership ("M&G") to represent a number of claimants whose claims were rejected because they were filed after the claims deadline for the Pigford Litigation. During late 2005 and early 2006, there existed proposed litigation which would allow claimants whose claims were denied in the Pigford Litigation to refile their claims.

{00009827.DOC}    3

Case 1:09-cv-00479-JAB -WWD   Document 1   Filed 07/02/09   Page 3 of 10

McLaw pledged its interest in distributions from M&G as additional collateral to cure its default under the Fen-Phen Agreement.

15. During this time, Capital Transaction Group, Inc. discussed with M&G the prospects of partnering with a larger law firm capable of handling a large claims volume in order to adequately process the large number of Pigford Litigation claimants being represented by M&G.

16. In 2006, enabling legislation was presented to the United States Congress for consideration which would allow late filers in the original Pigford Litigation to re-file their claims ("Pigford Litigation II").

17. In or around early 2007, Capital Transaction Group, Inc. introduced McEachin to James Farrin and Harris Pogust, two attorneys that expressed interest in partnering with M&G for the Pigford Litigation II claims.

18. On or about July 9, 2007, M&G and Defendant James S. Farrin, PC ("Farrin Law Firm") executed a letter of intent to serve as co-counsel for the Pigford Litigation II claims. At that time, Sidebar Capital, LLC ("Sidebar Capital"), an affiliate of Capital Transaction Group, Inc., began to work on terms for a loan to finance the Pigford Litigation II claims.

19. At this time, Farrin Law Firm was made aware of the Fen-Phen Agreement and Capital Transaction Group, Inc.'s rights under the Fen-Phen Agreement, including the security agreement and the material adverse change clause contained therein.

20. Negotiations between Sidebar Capital and Farrin Law Firm failed, and as a result, M&G entered into an agreement with the law firm of Pogust & Braslow, LLC ("Pogust Law Firm") subject to certain contingencies, such as obtaining financing. A true and accurate copy of

this agreement is attached hereto as Exhibit B and is hereinafter referred to as the "McEachin-Pogust Co-Counseling Agreement."

21. Sidebar Capital then began working on loan terms with Pogust Law Firm and M&G.

22. Upon information and belief, sometime after the McEachin-Pogust Co-Counseling Agreement was signed, Farrin Law Firm discovered that McEachin Law Firm had entered into a co-counseling agreement with Pogust Law Firm.

23. After learning of the McEachin-Pogust Co-Counseling Agreement, Farrin Law Firm induced M&G to enter into a new co-counseling agreement with Farrin Law Firm, without Capital Transaction Group, Inc.'s consent and in contravention of the McEachin-Pogust Co-Counseling Agreement.

24. Upon learning that M&G intended to breach the McEachin-Pogust Co-Counseling Agreement by entering into a new agreement with Farrin Law Firm, Pogust Law Firm threatened to file suit against M&G for breach of contract. Thereafter, M&G and Pogust Law Firm entered into a settlement agreement whereby Pogust was allowed to assume approximately 6,000 of the 40,000 Pigford Litigation II claims held by M&G, causing a significant reduction in the collateral subject to the security agreement contained in the Fen-Phen Agreement.

25. On or about December 14, 2007, Farrin Law Firm and M&G entered into a written co-counseling agreement. A true and accurate copy of this agreement is attached hereto as Exhibit C and is hereinafter referred to as the "McEachin-Farrin Co-Counseling Agreement."

26. On or about May 11, 2008, the Pigford Claims Remedy Act passed the United States Congress as part of the 2008 Farm Bill and enabled the Pigford Litigation II claims to be resubmitted for consideration (the "Enabling Leglislation").

27. Soon after the Enabling Legislation was passed, Farrin Law Firm was approached by the law firm of Chestnut, Sanders, Sanders, Pettaway & Campbell, LLC, the original Pigford Litigation class counsel, about co-counseling on their collective Pigford Litigation II claims.

28. On or about July 9, 2008, Farrin Law Firm and M&G entered into a Joint Representation Agreement Re Black Farmers Litigation. A true and accurate copy of this agreement is attached hereto as Exhibit D and is hereinafter referred to as the "Global Co-Counseling Agreement."

29. Pursuant to the Global Co-Counseling Agreement, Farrin Law Firm agreed to reduced fees from the approximately 100,000 Pigford Litigation II claims that were being handled by M&G. This agreement was executed without Capital Transaction Group, Inc.'s consent.

30. Under the terms of the McEachin-Farrin Co-Counseling Agreement, Farrin Law Firm was to make certain payments to M&G in order to reduce its debt to Plaintiff. One such payment is contained in paragraph 11(b) of the McEachin-Farrin Co-Counseling Agreement and requires a $900,000 payment to M&G within 60 days of the passage of the Enabling Legislation. Farrin Law Firm failed to make said payment to M&G within 60 days of the passage of the Enabling Legislation, and to date, Farrin Law Firm has failed and refused to make said payment.

31. On or about August 11, 2008, M&G and Defendant Farmers Law Group of Connecticut, LLC ("Farmers Law Group") entered into a Co-Counseling Agreement whereby, among other things, Farmers Law Group agreed to undertake and indemnify M&G for all of its obligations and debts to Plaintiff in exchange for certain rights to a portion of the fees generated from Pigford Litigation II claims. A true and accurate copy of this agreement is attached hereto

as Exhibit E and is hereinafter referred to as the "McEachin-Farmers Co-Counseling Agreement."

32. On or about August 11, 2008, Plaintiff, Farmers Law Group, and M&G jointly entered into an agreement entitled Acceptance and Acknowledgement of Assignment and Assumption of Debt and Mutual Release. A true and accurate copy of this agreement is attached hereto as Exhibit F and is hereinafter referred to as the "Assumption and Release Agreement."

33. Despite numerous demands, Farrin Law Firm has failed and refused to tender the $900,000.00 payment to M&G or Farmers Law Group.

36. Despite demand, Farrin Law Firm has failed and refused to allow M&G and Farmers Law Group to provide Plaintiff with reports required under the Fen-Phen Agreement.

35. On or about January 28, 2005, Capital Transaction Group Inc assigned its rights and obligations under the Fen-Phen Agreement to Plaintiff Fen-Phen Series 2005-01, a series of CapTran Funding LLC.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

36. Plaintiff realleges and incorporates herein by reference paragraphs 1-35 of its compliant as if fully set forth herein.

37. Farrin Law Firm and M&G entered into the McEachin-Farrin Co-Counseling Agreement.

38. Pursuant to paragraph 11(b) of the McEachin-Farrin Co-Counseling Agreement, Farrin Law Firm was obligated to pay M&G the sum of $900,000.00 within 60 days of the passage of the Enabling Legislation.

{00009827.DOC}                                7

Case 1:09-cv-00479-JAB -WWD   Document 1   Filed 07/02/09   Page 7 of 10

39. Farrin Law Firm failed to make said payment to M&G within 60 days of the passage of the Enabling Legislation, and to date, Farrin Law Firm has failed and refused to make said payment.

40. The aforementioned $900,000.00 payment to M&G was intended to reduce M&G's debt owed to Plaintiff, which has since been assumed by Farmers Law Group. This fact was known to Farrin Law Firm at the time the McEachin-Farrin Co-Counseling Agreement was executed.

41. Plaintiff is an intended third party beneficiary of the $900,000.00 payment required by paragraph 11(b) of the McEachin-Farrin Co-Counseling Agreement, and therefore, Plaintiff has standing to bring this claim against Farrin Law Firm as an intended third party beneficiary.

42. As a result of Farrin Law Firm's breach of the McEachin-Farrin Co-Counseling Agreement, Plaintiff has been damaged in an amount to be proven at trial but in no event less than $900,000.00.

## SECOND CLAIM FOR RELIEF
(Tortious Interference with Contract)

43. Plaintiff realleges and incorporates herein by reference paragraphs 1-42 of its compliant as if fully set forth herein.

44. Defendant Farrin Law Firm knew of the Fen-Phen Agreement and the McEachin-Pogust Co-Counseling Agreement at the time it induced M&G to breach the McEachin-Pogust Co-Counseling Agreement and at the time it induced M&G to enter into the McEachin-Farrin Co-Counseling Agreement.

45. Despite knowing of the Fen-Phen Agreement and McEachin-Pogust Co-Counseling Agreement, Farrin Law Firm intentionally interfered with those contracts by inducing M&G to breach its agreements.

46. Farrin Law Firm was also aware of the financial and status reporting requirements under the Fen-Phen Agreement. Despite knowing of these requirements, Farrin Law Firm has either induced M&G and Farmers Law Group to breach the Fen-Phen Agreement by not allowing the reporting, or Farrin Law Firm has refused to allow M&G and Farmers Law Group to perform these obligations.

47. Defendant Farrin Law Firm knew of the Fen-Phen Agreement at the time it induced M&G to enter into the Global Co-Counseling Agreement.

48. Despite knowing of the Fen-Phen Agreement, Farrin Law Firm intentionally interfered with this contract by inducing M&G to enter into the Global Co-Counseling Agreement, thereby reducing the value of Plaintiff's security interest secured by the Fen-Phen Agreement.

49. As a direct result of Farrin Law Firm's actions and omissions, Plaintiff was damaged due to a reduction in its collateral securing the amounts owed under the Fen-Phen Agreement. As a direct and foreseeable consequence of Farrin Law Firm's tortuous interference, Plaintiff has been damaged in an amount to be proven at trial.

50. Farrin Law Firm's actions were undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of Plaintiff.

### THIRD CLAIM FOR RELIEF
**(Unfair and Deceptive Trade Practices)**

51. Plaintiff realleges and incorporates herein by reference paragraphs 1-50 of its compliant as if fully set forth herein.

52. Farrin Law Firm's conduct as alleged above was in or affecting commerce.

53. Farrin Law Firm's conduct constitutes unfair and deceptive trade practices within

the meaning of N.C. Gen. Stat. § 75-1.1.

54. As a direct and proximate result of Farrin Law Firm's unfair and deceptive trade practices, as alleged herein, Plaintiff has suffered damages in an amount in excess of $10,000.00.

55. Plaintiff is entitled to recover treble the amount of damages caused by Farrin Law Firm's unfair and deceptive trade practices. Plaintiff is also entitled to recover its attorney's fees incurred in prosecuting this action.

WHEREFORE, PLAINTIFF prays the Court that:

1. It have and recover an amount in excess of $75,000.00 from Defendant James S. Farrin, PC pursuant to its First, Second, and Third Claims for relief;

2. That Farrin Law Firm be ordered to comply with the reporting requirements under the Fen-Phen Agreement;

3. For a declaration that Plaintiff's security interest in the Pigford Litigation II claims is superior to any claims of Farrin Law Firm to fees under the McEachin-Farrin Co-Counseling Agreement;

4. That the costs of this action be taxed against a party other than the Plaintiff, including reasonable attorneys fees;

5. For a trial by jury on all issues so triable; and

6. For such other relief as the Court deems just and proper.

This the 2nd day of July, 2009.　　　　SHIRLEY & ADAMS, PLLC

　　　　　　　　　　　　　　　　　　BY: /s/ Ryan J. Adams
　　　　　　　　　　　　　　　　　　Ryan J. Adams
　　　　　　　　　　　　　　　　　　N.C. State Bar No. 27687
　　　　　　　　　　　　　　　　　　150 Fayetteville Street, Suite 520
　　　　　　　　　　　　　　　　　　Raleigh, NC 27601
　　　　　　　　　　　　　　　　　　Tel: 919-899-6278
　　　　　　　　　　　　　　　　　　Fax: 919-899-6279
　　　　　　　　　　　　　　　　　　Email: ryanadams@shirley-adams.com