copy

# LOAN AND SECURITY AGREEMENT

This LOAN AND SECURITY AGREEMENT (this "Loan Agreement") is made as of the 27th day of January 2005, by and between CAPITAL TRANSACTION GROUP, INC., a South Carolina corporation authorized to do business in North Carolina, with its principal place of business at 105 Aviemore Drive, Pinehurst, North Carolina 28374 ("Lender"), and THE MCEACHIN LAW FIRM, P.C., a Virginia professional corporation, with its principal place of business at 5905 West Broad Street, Suite 100, Richmond, Virginia 23230 (the "Borrower").

WHEREAS, Borrower is a law firm engaged in representing plaintiffs who allegedly suffered harm as a result of their use of the diet drugs PONDIMIN and REDUX (which in combination with phentermine, are commonly referred to as "Fen-Phen") (each a "Plaintiff"), either directly, or by acting as supporting counsel, referring counsel or co-counsel to another law firm representing one or more such Plaintiffs directly (such other law firms referred to herein as "Lead Counsel"), and

WHEREAS, in connection with such representation, Borrower has entered into the contingent fee agreements, referral agreements, and co-counsel agreements described on the "Schedule of Contingent Fee Agreements" attached hereto as Schedule A (collectively, with any and all other agreements with respect to the Cases, the "Contingent Fee Agreements") with the Plaintiffs or Lead Counsel, as applicable, providing for Borrower's receipt of a certain percentage of any monetary recovery achieved by the Plaintiff(s), whether through settlement or trial, in such Fen-Phen lawsuits or cases (the "Cases"), and

WHEREAS, Borrower desires to obtain financing for the interim period prior to recovery with respect to the Cases to enable Borrower to pay, or refinance certain indebtedness incurred by Borrower to pay, certain operating expenses of Borrower during the course of representing the Plaintiffs and/or assisting Lead Counsel, and

WHEREAS, Lender desires to provide such financing to Borrower on the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, and intending to be legally bound hereby, the parties hereby agree as follows:

1.  Loans. Pursuant to the terms and conditions of this Loan Agreement, Lender shall loan to Borrower, in a single advance and subject to the terms and conditions hereof, up to One Million Three Hundred Thousand and no/100 Dollars ($1,300,000), which loan shall be evidenced by a promissory note in the form of Exhibit A attached hereto, duly executed on behalf of Borrower as of the date hereof (as it may be amended from time to time, the "Note").

2.  Security Interest; Priority. To secure repayment of the obligations of Borrower to Lender under this Loan Agreement, the Note, the other Loan Documents, and any renewals, extensions, amendments or modifications thereof, and also to secure any other indebtedness or liability of Borrower to Lender, whether direct or indirect, absolute or contingent, due or to become due, including future advances (the "Obligations"), Borrower hereby grants to Lender a

1730649v1



EXHIBIT
A

first priority security interest in all of Borrower's right, title and interest in and to the following (collectively, the "Collateral"):

All accounts, general intangibles, other rights to payment, documents, deposit accounts and money, whether now owned or hereafter arising, including, without limitation:

(i)     legal fees payable to Borrower from the settlement trust (together with all amendments thereto and as the same may be amended from time to time, the "Settlement Trust") pursuant to the Nationwide Class Action Settlement Agreement, dated as of November 18, 1999 among Wyeth, Inc. ("Wyeth") (formerly American Home Products Corporation) and the representatives of the class named therein, in connection with the lawsuit *In re Diet Drugs (Phentermine/Fenfluramine/Desflenflurmine) Products Liability Litig.*, No. 99-20593 (E.D. Pa.) together with all amendments thereto, including the Seventh Amendment, and as the same may be amended from time to time, (the "Settlement Trust Agreement").

(ii)     legal fees payable to Borrower by or on behalf of Plaintiffs that "opt-out" of the Settlement Trust Agreement, and

(iii)     all other fees owed by the Plaintiffs or Lead Counsel arising out of or relating to the Contingent Fee Agreements (all such fees described in clauses i, ii, and iii, the "Fees"); and

All products and proceeds thereof.

Borrower authorizes Lender to file any financing statements necessary or desirable to perfect Lender's security interest in the Collateral.  As used above and elsewhere in the Loan Documents, the terms "accounts," "general intangibles," "documents," "deposit accounts," "products" and "proceeds" shall each have the meaning specified for such term in the UCC. Borrower agrees that it will, at Lender's request, execute a notification to each Lead Counsel, notifying such Lead Counsel of Borrower's pledge of the Collateral to Lender and directing Lead Counsel to pay directly to Lender any amounts owing to Borrower.

3.     Interest.

(a)     Rate.  Interest on the outstanding principal balance of the Note shall accrue at the rate of five percent (5%) per month from the date advanced through and including January 26, 2006. Thereafter, interest on the outstanding principal balance of the Note shall accrue at the rate of four percent (4.0%) per month. Interest shall be computed on the basis of the actual number of days elapsed and a year of 360 days.

(b)     Savings Clause.  Notwithstanding any provision of the Note, any other Loan Document or any other agreement or commitment between Borrower and Lender, whether written or oral, express or implied, Lender shall never be entitled to charge, receive, or collect, nor shall amounts received hereunder be credited so that Lender shall be paid, as interest a sum greater than interest at the Maximum Rate. It is the intention of

2

the parties that the Note, and all instruments securing the payment of the Note or executed or delivered in connection therewith, shall comply with applicable law. If Lender ever contracts for, charges, receives or collects anything of value which is deemed to be interest under applicable law, and if the occurrence of any circumstance or contingency, whether acceleration of maturity of the Note, prepayment of the Note, delay in advancing proceeds of the Note, or any other event, should cause such interest to exceed the maximum lawful amount, any amount which exceeds interest at the Maximum Rate shall be applied to the reduction of the unpaid principal balance of the Note or any other indebtedness owed to Lender by Borrower, and if the Note and such other indebtedness are paid in full, any remaining excess shall be paid to Borrower. In determining whether the interest exceeds interest at the Maximum Rate, the total amount of interest shall be spread, prorated and amortized throughout the entire term of the Note until its payment in full. The term "Maximum Rate" as used in the Note means the maximum nonusurious rate of interest per annum permitted by whichever of applicable United States federal law or applicable state law permits the higher interest rate, including to the extent permitted by applicable law, any amendments thereof hereafter or any new law hereafter coming into effect to the extent a higher Maximum Rate is permitted thereby. If at any time the applicable interest rate or the Note shall exceed the Maximum Rate, such interest rate shall be automatically limited to the Maximum Rate until the total amount of interest accrued under the Note equals the amount of interest which would have accrued if there had been no limitation to the Maximum Rate.

4.      Payments.

(a)     Mandatory Installments.   No payments are due on the Note before February 1, 2007.  Beginning February 1, 2007, and on the 1st day of each month thereafter until January 1, 2009, Borrower shall make monthly payments on the Note equal to $177,084.44, including principal and interest.  On January 1, 2009 the unpaid principal balance of the Note together with accrued interest shall be due and payable in full.

(b)     Mandatory Prepayments.   Upon payment of any Fees to Borrower, Lead Counsel, or any other party, Borrower will immediately, and in any event within three (3) business days of receipt, remit the Fees to Lender, or cause such Fees to be remitted to Lender, in prepayment of the Note.  Any prepayment of principal on or before July 31, 2005 shall be subject to and accompanied by a prepayment fee calculated as provided in Section 4(d).

(c)     Optional Prepayments.   In addition to payments described above, Borrower may elect to prepay the Note, in whole or in part, at any time.  Any prepayment of principal prior to July 31, 2005 shall be subject to and accompanied by a prepayment fee calculated as provided in Section 4(d).

(d)     Prepayment Premium.  In consideration of Lender's commitment of capital to make the loan to Borrower, Borrower agrees to pay a prepayment premium in respect of any payment of principal on the Note prior to July 31, 2005 (each such principal payment, a "Prepayment").  The prepayment premium is payable whether the Prepayment

3

is voluntary, mandatory, or the result of acceleration. The prepayment premium shall equal interest accrued on the amount of the prepayment at a per annum rate of five percent (5%) from the date of prepayment through and including July 31, 2005.

    (e)   **Application.** All payments shall be applied first to accrued interest, then to any prepayment premium, and then to principal. Prepayments (of principal) shall be applied to installments due under the Note in the inverse order of maturity.

    5.   **Recordation of Payments.** All payments and prepayments of the principal and interest amounts due hereunder and the respective dates of such payments shall be recorded and endorsed by the holder of the Note on Annex A thereto, or on a continuation thereof, which shall be attached thereto and made a part thereof, or otherwise recorded by such holder in its internal records. However, any failure of the holder of the Note to record any advance, payment or prepayment made hereunder, or any mistake made in such recordation, shall have no effect on Borrower's obligations pursuant to the Note. Annex A or such records shall, absent manifest error, conclusively be presumed to be correct and accurate.

    6.   **Representations and Warranties.** Borrower hereby makes each of the following representations and warranties to Lender:

    (a)   **Existence; Authority.** Borrower is a professional corporation duly organized, validly existing and in good standing under the laws of the State of Virginia. Borrower has all requisite power to make, deliver, and perform its obligations under the Loan Documents and all other documents and instruments contemplated hereby and has taken all necessary action to authorize the execution, delivery and performance of the Loan Documents. The Loan Documents constitute the valid obligations of Borrower, legally binding upon Borrower and enforceable against Borrower in accordance with their terms. The execution, delivery and performance by Borrower of the Loan Documents do not violate any provision of any law, statute, rule or regulation or any order of any court, or any rule, regulation or order of any other agency of government binding upon Borrower.

    (b)   **Security Interest.** This Loan Agreement creates and grants to Lender a valid security interest in the Collateral, which security interest shall be perfected upon the filing of the financing statements contemplated by Section 2 hereof and upon the application of proceeds of the Note to pay the Existing Creditors in the amounts identified on Schedule C, the security interest shall be a first priority security interest, subject to no other encumbrance. Borrower's chief executive office is set forth in the first paragraph of this Loan Agreement, and its organizational identification number is set forth on Schedule B. During the preceding five years, Borrower has not used any trade name, assumed name, or other name except Borrower's name set forth above and any other name identified in Schedule B.

    (c)   **No Litigation.** There are no actions, suits or proceedings (including disciplinary proceedings) pending (or, to the knowledge of Borrower or its shareholders, members, managers or officers, threatened) against Borrower or Guarantor before any court, arbitrator or administrative agency, except as described on Schedule B.

4

     (d)    <u>Licenses</u>.    Borrower possesses all licenses, permits and other authorizations from governmental or regulatory authorities that are necessary for the ownership, maintenance and operation of its business. Each attorney employed by or associated or affiliated with Borrower who is involved with the Cases undertaken by Borrower in its representation of the Plaintiffs possesses all licenses, permits and other authorizations from governmental or regulatory authorities that are necessary legally to represent the Plaintiffs in the Cases.

     (e)    <u>Contingent Fee Agreements</u>. Borrower has all rights in and good and valid title to the Collateral including, without limitation, the percentage interest in each of the Cases as identified in the Schedule of Contingent Fee Agreements set forth in <u>Exhibit A</u> hereto, free and clear of all liens, claims and encumbrances of any nature whatsoever, and has full authority to grant to Lender the security interest in the Collateral contemplated hereby. Each Contingent Fee Agreement is a valid, binding and enforceable agreement in full force and effect granting to Borrower the right to payment on the terms and conditions set forth therein. No party is in violation or breach of any provision thereof. Borrower has Contingent Fee Agreements with one Lead Counsel, identified on <u>Schedule A</u>. All Fees payable under the Contingent Fee Agreements are payable directly to Borrower.

     (f)    <u>Borrower Financial Statements</u>. The financial statements of Borrower that have been made available to Lender to date, including but not limited to a balance sheet, statement of income and statement of cash flows as of and for the period ended December 31, 2004, fairly and accurately represent the financial condition of Borrower for the periods referred to therein and have been prepared in accordance with generally accepted accounting principles consistently applied ("GAAP"). There are no liabilities of Borrower, direct or indirect, fixed or contingent, which are not reflected therein.

     (g)    <u>Guarantor Financial Statements</u>. The personal financial statement(s) of Guarantor delivered to Lender are accurate and complete and disclose all liabilities, direct or indirect, fixed or contingent, of Guarantor.

     (h)    <u>No Conflicting Agreements</u>. There is no charter, bylaw, operating agreement or other document pertaining to the organization, power or authority of Borrower and no provision of any existing agreement or contract binding on Borrower or Guarantor or affecting the Collateral that would conflict with or in any way prevent the execution, delivery or carrying out of the terms of any Loan Document or result in or require the creation or imposition of any lien, claim or encumbrance of any nature whatsoever or require the filing with or notice to, or consent or approval of, any person, entity or governmental authority.

     (i)    <u>Taxes</u>. All taxes and assessments due and payable by Borrower or Guarantor have been paid, and Borrower and Guarantor each has filed all required tax returns, except as disclosed on <u>Schedule B</u>.

     (j)    <u>Full and Accurate Disclosure</u>. No statement of fact made by Borrower or Guarantor in any Loan Document or in the Guaranty, or in any document delivered under

any Loan Document, including the Schedule of Contingent Fee Agreements and reports to be delivered pursuant to Section 8 hereof, contains, or will contain when made, any untrue statement of a material fact or omits, or will omit when made, any material fact necessary to make statements contained herein not misleading. There is no material fact presently known to Borrower, which has not been disclosed to Lender, that adversely affects, nor as far as the shareholders, managers, directors or officers of Borrower can reasonably foresee, might adversely affect, the business, operations or condition (financial or otherwise) of Borrower or Guarantor or the likelihood that Borrower will be entitled to payment pursuant to the Contingent Fee Agreements.

(k)    Compliance with Applicable Laws.  Borrower is in compliance with all applicable laws, rules, regulations and orders of any governmental and/or regulatory authority exercising proper jurisdiction over Borrower.

(l)    Solvency; Fraudulent Transfer.  After giving effect to the execution and delivery of the Loan Documents and the borrowings contemplated thereby, Borrower will not be "insolvent" as that term is defined in Section 101(32) of Title 11 of the United States Code or under applicable state law. No transfer of property is being made by Borrower and no obligation is being incurred by Borrower in connection with the transactions contemplated by this Agreement or the other Loan Documents with the intent to hinder, delay, or defraud either present or future creditors of Borrower.

(m)    Use of Proceeds.  Borrower will use the proceeds of the loan contemplated hereby for working capital and other general business purposes, including repayment of indebtedness.

(n)    No Default.  Neither Borrower nor Guarantor is in default of any material agreement [except for agreements with the Existing Creditors identified under item 5 on **Schedule B**, which agreements will terminate upon payment in full of the indebtedness in accordance with the pay-off letters from such Existing Creditors, copies of which Borrower has delivered to Lender.]

(o)    Subsidiaries.  Borrower does not have any subsidiaries or conduct operations or own any assets through any other entity.

7.    Conditions of Advances.  The extension of credit by Lender to Borrower under this Loan Agreement shall be subject to satisfaction of the following conditions precedent:

(a)    Lender shall have received the executed Loan Documents, and each other document and item, listed on Schedule C, each in form and substance satisfactory to Lender, including payment of a closing fee of $19,500, plus Lender's due diligence expenses.

(b)    The representations and warranties set forth in Section 3 and in each Loan Document and the Guaranty shall be true and correct.

(c)    No Event of Default, and no event that with notice or lapse of time or both would constitute an Event of Default, shall have occurred and be continuing.

6

8.    Affirmative Covenants. Borrower covenants that until the Obligations are paid in full Borrower will:

(a)    Annual Financial Statements. Deliver to Lender, as soon as available and in any event within 90 days after the close of each of the Borrower's fiscal years (commencing with the fiscal year ended December 31, 2004), the Borrower's internally prepared annual statement of assets, liabilities and equity as at the end of such year and statement of its revenues and expenses for such year, certified in a form satisfactory to Lender by Borrower to have been prepared in accordance with GAAP in a manner consistent with prior practices satisfactory to Lender.

(b)    Quarterly Financial Statements. Deliver to Lender, as soon as available, and in any event within 45 days after the close of each of Borrower's fiscal quarters (commencing with the fiscal quarter ending March 31, 2005), quarterly internally-prepared financial statements (including balance sheet and statement of income) of Borrower for such quarter, and for the year-to-date, certified in a form satisfactory to Lender by Borrower to have been prepared in accordance with GAAP in a manner consistent with prior practices satisfactory to Lender.

(c)    Periodic Case Reports. Deliver to Lender, within ten (10) days of the end of each calendar quarter, or if requested by Lender, each month, a written report regarding the status of all Cases underlying the Contingent Fee Agreements (the "Periodic Reports"), which shall set forth, to the best of Borrower's knowledge, (i) the amount, if known, that is due Borrower pursuant to each Contingent Fee Agreement, (ii) the amount, if any, that has been collected by Borrower pursuant to each Contingent Fee Agreement, (iii) the date on which such amount was collected; (iv) an estimate of the range of expected recoveries in the Cases, (v) a list of any Cases that have been decided unfavorably to the Plaintiff involved or that have been abandoned or transferred to other legal counsel by the Plaintiff or Lead Counsel involved, and (vi) a certification that there is no material fact known to Borrower at the time of such report, which has not been disclosed to Lender, that adversely affects, or is reasonably likely to adversely affect, the business, operations, or condition (financial or otherwise) or prospects of Borrower or the likelihood that Borrower will be entitled to expected payment pursuant to the Contingent Fee Agreements. The Periodic Reports shall be signed by an officer of Borrower.

(d)    Interim Reporting. Notify Lender within two (2) business days of learning that (i) the employment, association or affiliation with Borrower of any attorney actively involved with any of the Cases has been terminated for any reason, (ii) any attorney actively involved with any of the Cases is the subject of any disciplinary proceedings of the state bar association or state court exercising jurisdiction over such attorney, (iii) Borrower or Lead Counsel, as applicable, has ceased to represent any Plaintiff before the applicable Case is decided, (iv) any Case has been decided adversely to the Plaintiff(s) therein or abandoned, (v) any provision of any Contingent Fee Agreement has been found unenforceable by any court or governing body, or any Plaintiff or Lead Counsel has repudiated any provision of any Contingent Fee Agreement, or (vi) a material adverse change has occurred in any Case or in the prospect of recovery thereon.

7

(e)     <u>Access to Contingent Fee Agreements and Case Files</u>. Permit Lender to inspect the Contingent Fee Agreements and Borrower's Case files regarding the underlying Cases pursuant to which such Contingent Fee Agreements were signed at any time and without prior notice, subject to such limitations, if any, as may reasonably be required to preserve the attorney/client privilege and comply with all applicable ethical obligations. Borrower shall ensure that Lender is granted access to any office of Borrower at which such information is located.

(f)     <u>Preservation of Existence</u>. Preserve its corporate existence in the State of Virginia, and maintain and preserve all of its properties and assets necessary or useful in the proper conduct of its business.

(g)     <u>Compliance with Applicable Laws</u>. At all times comply with all applicable laws, rules, regulations and orders of any governmental and/or regulatory authority exercising proper jurisdiction over Borrower, including with respect to its handling of the Cases.

(h)     <u>Enforcement of Contingent Fee Agreements</u>. Take all action necessary and appropriate to enforce its right to payment set forth in and defend its rights under the Contingent Fee Agreements.

(i)     <u>Payment of Taxes</u>. File all tax returns and reports required by law to be filed by it and pay before they become delinquent, all taxes, assessments and governmental charges and levies imposed upon it or its property and all claims or demands of any kind (including those of suppliers, mechanics, carriers, warehousemen, landlords and other like persons) which, if unpaid, might result in the creation of a lien upon any of its property, and cause Guarantor to do the same.

(j)     <u>Other Information</u>. Deliver to Lender such other information as it may request from time to time.

9.     <u>Negative Covenants</u>. Borrower covenants that until the Obligations are paid in full Borrower will not, without the prior written consent of Lender:

(a)     <u>Indebtedness</u>. Incur any indebtedness for borrowed money other than the Obligations.

(b)     <u>Liens or Encumbrances</u>. Sell or otherwise dispose of any of its property or assets or create, assume, or allow to exist any lien on any of its property or assets, other than the lien in favor of Lender contemplated by this Loan Agreement.

(c)     <u>Certain Changes</u>. Change its state of organization, name or address or organizational structure or identity without first giving Lender thirty (30) days prior written notice.

(d)     <u>Distributions</u>. Make any distribution of the proceeds of any Contingent Fee Agreement other than to Lender.

8

(e)     Modification of Contingent Fee Agreements.  Modify, amend, terminate or otherwise make any change to any provision of any Contingent Fee Agreement without the prior written consent of Lender.

(f)     Sale of Assets.  Merge or consolidate with any other entity or sell, transfer, lease or otherwise convey, all or any material part of its assets.

(g)     Prosecution of Cases.  Abandon or otherwise fail diligently to pursue a settlement or verdict in the Cases.

10.     Events of Default.  The occurrence of any of the following events shall constitute an Event of Default hereunder:

(a)     Obligations.  Borrower fails to make any payment to Lender when due.

(b)     Misrepresentations.  Any representation or warranty made by or on behalf of Borrower or Guarantor in this Loan Agreement, any other Loan Document or the Guaranty, or by or on behalf of Borrower or Guarantor in any certificate, statement, report or document now or later furnished to Lender pursuant to this Loan Agreement, any other Loan Document or the Guaranty, shall be false or misleading in any material respect as of the date made.

(c)     Covenants.  Borrower defaults in the observance or performance of any covenant or agreement contained in this Loan Agreement or any other Loan Document (and not otherwise covered in this Section 10) unless such default is cured to Lender's satisfaction within five (5) days after the sooner to occur of receipt of notice of such default from Lender or the date on which such default first becomes known to Borrower.

(d)     Diminution of Collateral.  Termination by more than 5.00% (by number) of the Plaintiffs of their attorney/client relationship with Borrower, termination of any Contingent Fee Agreement between Borrower and any Lead Counsel, Borrower's election to cease to represent more than 5.00% (by number) of the Plaintiffs before the applicable Cases are resolved, or loss or abandonment of or material adverse event or change in any Case(s) that collectively represent more than 10% of the projected Fees.

(e)     Dissolution or Bankruptcy.     Borrower voluntarily or involuntarily dissolves its legal status or winds up its affairs, or bankruptcy proceedings, whether voluntary or involuntary, are filed by or against Borrower or Guarantor.

(f)     Guarantor.  (i) Guarantor dies or his employment, association or affiliation with Borrower terminates, (ii) Guarantor fails to perform or observe any term of the Guaranty or demand is made on the Guarantor under the Guaranty, (iii) Guarantor contests the validity or enforceability of the Guaranty or denies or renounces his liability under the Guaranty, or (iv) the Guaranty ceases, for any reason, to be in full force and effect.

9

(g) **Invalidity of Contingent Fee Agreements.** Any provision of any Contingent Fee Agreement is found to be unenforceable by any court or governing body exercising appropriate jurisdiction over such matter.

(h) **Judgments.** A judgment or judgments for the payment of money in excess of the sum of $50,000 in the aggregate shall be rendered against Borrower or Guarantor and either (i) the judgment creditor initiates execution on such judgment or (ii) such judgment remains unpaid or undischarged for more than thirty (30) days from the date of entry thereof or such longer period during which execution of such judgment shall be stayed during an appeal from such judgment.

(i) **Invalidity.** This Loan Agreement or any other Loan Document that purports to create a lien shall, for any reason, fail or cease to create a valid and perfected and first priority lien on or security interest in the Collateral covered hereby or thereby, or any provision of any Loan Document shall at any time for any reason be declared to be null and void, or the validity or enforceability thereof shall be contested by Borrower, or a proceeding shall be commenced by Borrower, or by any governmental authority having jurisdiction over Borrower, seeking to establish the invalidity or unenforceability thereof, or Borrower shall deny that it has any liability or obligation purported to be created under any Loan Document.

(j) **Life Insurance.** Life insurance on the life of Guarantor on the terms of the policy identified on Schedule C ceases to be maintained.

(k) **Material Adverse Change.** A material adverse change shall occur in the condition (financial or otherwise), business, property or prospects of Borrower or Guarantor.

11. **Remedies.** Upon the occurrence of any Event of Default, Lender's obligation to extend financing under this Loan Agreement shall immediately cease. Upon the occurrence or existence of any Event of Default, or any time thereafter, without prejudice to the rights of Lender to enforce its claims against Borrower for damages for failure by Borrower to fulfill any of its obligations hereunder, subject only to prior receipt by Lender of payment in full of all obligations then outstanding in a form acceptable to Lender, Lender shall have all of the rights and remedies available to it under any applicable law, including but not limited to those set forth below. The rights and remedies of Lender under this Loan Agreement, the other Loan Documents, and all other agreements shall be cumulative. Lender shall have all other rights and remedies not inconsistent herewith as provided under the Uniform Commercial Code, by law, or in equity. No exercise by Lender of one right or remedy shall be deemed an election, and no waiver by Lender of any Event of Default shall be deemed a continuing waiver. No delay by Lender shall constitute a waiver, election, or acquiescence by it.

(a) **Acceleration of Obligations.** Lender, at its option, may declare all of the Obligations to be immediately due and payable, whereupon the same shall become immediately due and payable without presentment, demand, protest, notice of nonpayment or any other notice required by law relative thereto, all of which are hereby expressly waived by Borrower, anything contained herein to the contrary

10

notwithstanding; provided, however, that all of the Obligations shall be immediately due and payable, without further act or notice, upon the occurrence of any Event of Default under Section 10(e).

    (b)   Remedies of a Secured Party:

        (i)   Lender shall have the rights and remedies of a secured party under the UCC in effect at the time of such Event of Default in the State of North Carolina.

        (ii)   Lender may, from time to time, at its option, perform any agreement of Borrower hereunder which Borrower shall fail to perform and take any other action which Lender deems necessary for the maintenance or preservation of the Collateral or its interest therein, and Borrower shall reimburse Lender for all expenses of Lender in connection with the foregoing, together with interest thereon at the highest rate of interest borne by any of the Obligations at such time from the date incurred until reimbursed by Borrower.

12.   Definitions.

    (a)   Certain Terms. Unless otherwise defined therein, the following terms as used in this Loan Agreement and the other Loan Documents have the following meanings:

"Cases" has the meaning given in the "Whereas" clauses of this Loan Agreement.

"Collateral" has the meaning given in Section 2.

"Contingent Fee Agreements" has the meaning given in the "Whereas" clauses of this Loan Agreement.

"Event of Default" has the meaning given in Section 10 of this Loan Agreement.

"Existing Creditors" means the creditors identified in item 5 on Schedule C.

"Fees" has the meaning given in Section 2 of this Loan Agreement.

"Guarantor" means A. Donald McEachin.

"Guaranty" means the Guaranty of even date herewith executed by Guarantor in favor of Lender, as it may be amended from time to time.

"Lead Counsel" has the meaning given in the "Whereas" clauses of this Loan Agreement.

"Loan Documents" means this Loan Agreement and the Note.

"Note" has the meaning given in Section 1 of this Loan Agreement.

11

"Obligations" has the meaning given in Section 2 of this Loan Agreement.

"Plaintiffs" has the meaning given in the "Whereas" clauses of this Loan Agreement.

"Schedule of Contingent Fee Agreements" means the list delivered and certified by Borrower to Lender (and attached hereto as Exhibit A), which identifies all contingent fee agreements, referral agreements and co-counsel agreements, under which Borrower is entitled to the payment of fees in respect of any Plaintiffs who allege harm from the use of diet drugs.

(b)    UCC Terms.  All terms used in the Loan Documents, and not otherwise defined therein, which are defined in the Uniform Commercial Code ("UCC") as in effect in the State of North Carolina, shall have the meanings given them in the UCC

13.    Amendment.  This Loan Agreement, the Note and the other Loan Documents may be amended or modified only with the express written consent of both Lender and Borrower (or such other party thereto).

14.    Costs and Expenses.  The loan made hereunder shall be made without cost to Lender, and Borrower shall pay all costs incurred by Lender in connection with the extension of credit under this Loan Agreement and the preparation, execution and negotiation of the Loan Documents, including attorneys' fees.  If any Event of Default shall occur, Borrower shall pay upon Lender's demand therefor all reasonable attorneys' fees incurred by Lender in exercising its rights and remedies hereunder on account of such Event of Default.  Such reasonable attorneys' fees shall be determined based upon actual time expended and services actually performed by such attorneys at their usual and customary rates and shall not be based upon any statutory presumption.  All amounts payable by or on account of Borrower to Lender shall be applied, at Lender's discretion, first to fees and expenses owing to Lender, then to prepayment fees, and then to interest on and principal of the Note, or in such other order as Lender shall elect.

15.    Further Assurances.  Borrower shall take such further action, and execute and deliver such other documents, as Lender may reasonably request to assure Lender that its rights hereunder are adequately documented and protected.

16.    Power of Attorney.  Borrower hereby irrevocably makes, constitutes, and appoints Lender (and any of Lender's officers, employees, or agents designated by Lender) as Borrower's true and lawful attorney, with power to (a) if Borrower refuses to, or fails timely to, execute and deliver any of the documents deliverable by it hereunder, sign its name on any of such documents, and (b) endorse its name on any of its payment items (including checks) that may come into Lender's possession.  The appointment of Lender as Borrower's attorney, and each and every one of its rights and powers, being coupled with an interest, is irrevocable until the Obligations have been fully and finally repaid and performed.

17.    Partial Invalidity.  The unenforceability or invalidity of any provision of this Loan Agreement, the Note or any other Loan Document shall not affect the enforceability or validity of any other provision herein or therein.

12

18.     Applicable Law.  THIS LOAN AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AND SHALL AT ALL TIMES BE DEEMED TO HAVE BEEN MADE IN NORTH CAROLINA, WHICH IS LENDER'S PRINCIPAL PLACE OF BUSINESS.  BORROWER ACKNOWLEDGES AND AGREES THAT IT SOUGHT OUT LENDER IN NORTH CAROLINA FOR FINANCING.   THE LOAN PROVIDED FOR HEREIN IS TO BE FUNDED TO BORROWER'S BANK ACCOUNT IN NORTH CAROLINA AND SHALL BE REPAID TO LENDER'S BANK ACCOUNT IN NORTH CAROLINA.  THE AGREEMENT OF THE PARTIES SET FORTH HEREIN SHALL BE PERFORMED IN NORTH CAROLINA AND THIS LOAN AGREEMENT SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED, IN ACCORDANCE WITH THE INTERNAL SUBSTANTIVE LAWS OF THE STATE OF NORTH CAROLINA WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS AND THE LIKE. AS PART OF THE CONSIDERATION FOR THE LOAN MADE TO BORROWER ON THE DATE HEREOF, BORROWER HEREBY CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF NORTH CAROLINA AND WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS UPON BORROWER. BORROWER WAIVES ANY OBJECTION TO JURISDICTION AND VENUE OF ANY ACTION INSTITUTED HEREUNDER AND AGREES NOT TO ASSERT ANY DEFENSE BASED ON LACK OF JURISDICTION OR VENUE.  ANY AND ALL DISPUTES ARISING OUT OF THIS CONTRACT SHALL BE LITIGATED IN THE MOORE COUNTY DISTRICT OR SUPERIOR COURT FOR THE STATE OF NORTH CAROLINA. ANY LITIGATION FILED IN FEDERAL COURT SHALL BE FILED IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA, LOCATED IN GREENSBORO, NORTH CAROLINA.  BORROWER UNDERSTANDS THAT THE "CHOICE OF LAW," "FORUM" AND "VENUE" CLAUSES ARE CRITICAL IN NATURE, AND ARE ESSENTIAL TO THIS LOAN AGREEMENT, AND THEY HAVE NOT BEEN PLACED IN THIS LOAN AGREEMENT AS MERE "FORM" INSERTIONS AND RECITALS.

19.     Waiver of Jury Trial.  BORROWER AND LENDER HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF ANY OF THE LOAN DOCUMENTS OR ANY OF THE TRANSACTIONS CONTEMPLATED THEREIN, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW OR STATUTORY CLAIMS.  BORROWER AND LENDER REPRESENT THAT EACH HAS REVIEWED THIS WAIVER AND EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. IN THE EVENT OF LITIGATION, A COPY OF THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

20.     Assignment.  This Loan Agreement shall be binding on Borrower, its successors and assigns for the term hereof.  Borrower shall not assign its rights under this Loan Agreement to any third party, and no third party shall have any rights under this Loan Agreement, without the prior written consent of Lender.  Lender reserves, and shall have, the right at any time without the consent of Borrower to sell, assign (or grant participation in), transfer, or pledge as collateral all or any part of, or any interest in, Lender's rights and benefits under each of the Loan Documents.  In connection therewith, Lender may disclose all documents and information which

13

Lender now has or may hereafter acquire relating to any credit subject hereto, Borrower or its business, any of the Collateral required hereunder, or Guarantor.

21. **Term.** This Loan Agreement shall remain in force until payment and performance of all Obligations.

22. **Interpretation.** The parties hereto acknowledge and agree that because each party has reviewed and negotiated the terms and provisions of the Loan Documents, the rule of construction, to the effect that any ambiguity is resolved against the drafting party, shall not be employed in the interpretation of the Loan Documents.

23. **Section Headings.** Section headings contained in this Loan Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Loan Agreement.

24. **No Waiver.** No failure or delay of Lender in exercising any right or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power. Lender's rights and remedies hereunder are cumulative and not exclusive of any rights or remedies that it would otherwise have.

25. **Counterparts.** This Loan Agreement may be executed in multiple counterparts. Each of the counterparts will be considered an original, and all counterparts constitute one and the same agreement.

26. **Entire Agreement.** This Loan Agreement and the other Loan Documents embody the entire agreement and understanding between the Borrower and the Lender with respect to the subject matter hereof and thereof. This Loan Agreement supersedes all prior agreements and understandings relating to the subject matter hereof.

27. **Indemnification.** Borrower shall pay, indemnify, defend, and hold Lender and its officers, directors, partners, members, employees, agents, successors and assigns (each, an "Indemnified Person") harmless (to the fullest extent permitted by law) from and against any and all claims, demands, suits, actions, investigations, proceedings, and damages, and all reasonable attorneys' fees and disbursements and other costs and expenses actually incurred in connection therewith (as and when they are incurred and irrespective of whether suit is brought), at any time asserted against, imposed upon, or incurred by any of them (i) in connection with or as a result of or related to the execution, delivery, enforcement, performance, or administration (including any restructuring or workout with respect hereto) of this Loan Agreement, any of the other Loan Documents, or the transactions contemplated hereby or thereby or the monitoring of Borrowers' compliance with the terms of the Loan Documents, and (ii) with respect to any case, investigation, litigation, or proceeding related to this Loan Agreement, any other Loan Document, or the use of the proceeds of the credit provided hereunder (irrespective of whether any Indemnified Person is a party thereto), or any act, omission, event, or circumstance in any manner related thereto (all the foregoing, collectively, the "Indemnified Liabilities"). The foregoing to the contrary notwithstanding, Borrower shall have no obligation to any Indemnified

14

Person under this Section 27 with respect to any Indemnified Liability that a court of competent jurisdiction finally determines to have resulted from the gross negligence or willful misconduct of such Indemnified Person. This provision shall survive the termination of this Loan Agreement and the repayment of the obligations. If any Indemnified Person makes any payment to any other Indemnified Person with respect to an Indemnified Liability as to which Borrower was required to indemnify the Indemnified Person receiving such payment, the Indemnified Person making such payment is entitled to be indemnified and reimbursed by Borrower with respect thereto. **WITHOUT LIMITATION, THE FOREGOING INDEMNITY SHALL APPLY TO EACH INDEMNIFIED PERSON WITH RESPECT TO INDEMNIFIED LIABILITIES WHICH IN WHOLE OR IN PART ARE CAUSED BY OR ARISE OUT OF ANY NEGLIGENT ACT OR OMISSION OF SUCH INDEMNIFIED PERSON OR OF ANY OTHER PERSON.**

28.     Notices. Notices and other communications to be given hereunder shall be in writing addressed to the appropriate party at the address set forth below, and may be delivered or sent via reputable courier or U.S. Mail.

|  |  |
|---|---|
| If to Borrower: | The McEachin Law Firm, P.C. |
|  | 5905 West Broad Street, Suite 100 |
|  | Richmond, Virginia 23230 |
|  | Attn: A. Donald McEachin |
|  |  |
| If to Lender: | Capital Transaction Group Inc. |
|  | 105 Aviemore Drive |
|  | Pinehurst, NC 28374 |
|  | Attn: Wayne C. Walker, President |

All notices and other communications given to a party hereto in accordance with the provisions of this Loan Agreement shall be deemed to have been given on the date of receipt, in each case addressed to such party as provided in this Section 28 or in accordance with the latest unrevoked direction from such party.

**Signature Page Follows**

15

IN WITNESS WHEREOF, the parties hereto have duly executed this Loan Agreement in **Pinehurst**, North Carolina, as of the day and year first above written.

Borrower:                                          Lender:

THE MCEACHIN LAW FIRM, P.C.                         CAPITAL TRANSACTION GROUP, INC

By: _A. D D M'S C_                                 By: _Wayne C. Walker_

Name: _A. Donald McEachin_                          Name: Wayne C. Walker

Title: _President_                                  Title:   President

1730649v1

**Exhibit A**

**PROMISSORY NOTE**

$1,300,000

January 27, 2005
Maturity Date: January 1, 2009

FOR VALUE RECEIVED, the undersigned, The McEachin Law Firm, P.A., a Virginia professional corporation ("Borrower"), a Virginia professional corporation ("Borrower"), promises to pay to the order of Capital Transaction Group Inc, a South Carolina corporation authorized to do business in North Carolina ("Lender"), at such place as Lender may designate, in lawful money of the United States of America, the principal sum of One Million Three Hundred Thousand and no/100 Dollars ($1,300,000), together with interest on the outstanding principal balance at the rates set forth in the Loan and Security Agreement between Borrower and Lender dated as of the date hereof (as it may be amended, restated or otherwise modified from time to time, the "Loan Agreement").

This Note is issued pursuant to, and is entitled to the benefits of the Loan Agreement. Reference is made to the Loan Agreement for a statement of the terms and conditions governing this Note, including the repayment schedule and the terms and conditions under which this Note may and shall be prepaid or its maturity date accelerated.

This Note is secured pursuant to the Loan Agreement and is guaranteed pursuant to the Guaranty, as more specifically described in the Loan Agreement.

In the event that the indebtedness evidenced hereby is collected by or through an attorney, Lender shall be entitled to collect reasonable attorneys' fees (determined in accordance with such attorneys' customary charges and not as a statutory percentage of the outstanding balance of the Note). Demand, presentment, protest, notice of protest and notice of dishonor are hereby waived.

This Note shall be governed by, and interpreted and construed in accordance with, the internal laws of the State of North Carolina, as provided in the Loan Agreement.

BORROWER:

THE MCEACHIN LAW FIRM, P.C., a Virginia professional Corporation

By: _A. Du⟩Mcͨ͵C_____

Name: A. Donald McEachin
Title: _President_____

**Annex A to Note**

**Advance: $1,300,000 on January 27, 2005**

**Payments**

| Date | Payment Amount | Portion Applied to Interest and Prepayment Premium | Portion Applied to Principal | Principal Balance Remaining | Name of Person Recording Payment or Advance |
|------|----------------|---------------------------------------------------|------------------------------|-----------------------------|---------------------------------------------|
|      |                |                                                   |                              |                             |                                             |
|      |                |                                                   |                              |                             |                                             |
|      |                |                                                   |                              |                             |                                             |
|      |                |                                                   |                              |                             |                                             |
|      |                |                                                   |                              |                             |                                             |
|      |                |                                                   |                              |                             |                                             |
|      |                |                                                   |                              |                             |                                             |
|      |                |                                                   |                              |                             |                                             |
|      |                |                                                   |                              |                             |                                             |
|      |                |                                                   |                              |                             |                                             |

A-2

## Schedule A

Adams, Frances
Alexander, Audrey
Anderson, Nancy
Andrews, Kathryn
Archer, Juette
Barksdale, Ervin
Best, Shirley
Bishop, Patricia
Blanco, Bob
Bowen, Sandra
Brown, Barbara
Carver, Ruth
Clay, Dianna
Cobb, Patricia
Coleman, Sylvia
Coles, Mary
Cox, Charlene
Crump, Sandra
Currin, Dorothy
Davis, Cindy
Deans, Kimberly
Durgin, Jeffery
Durgin, Pauline
Eason, Jerline
Epps, Carolyn
Frasher, Ray
Gamble, James
Geary, Louvon
Grubbs, Darline
Harris, Cheril
Harris, Gladice
Harris, Patricia
Harrison, Melissa
Haynes, Ida
Hepburn, Regina
Higgonbottom, Ruth
Holcomb, Dorothy
Hopson, Carolyn

Jarmon, Dawn
Jarrel, Tom
Jefferson, Zina
Johnson, Geneva
Jones, Brenda
Jordan, Celestine
Kanode, Cynthia
Lankford, Shirley
Lawrence, Judith
Lee, Mary
Mabe, Golda
Martin, Joanne
McKay, Felicia
Micheal, Elnora
Moore, Juanita
Morgan, Janice
Moxley, John
Norman,Debra
Orr, Susan
Parham, Janet
Pascale, Mary
Patterson, Evelyn
Perron, Conni
Poindexter, Marietta
Powell, Betty
Powell, Carla
Powell, Ester
Price, Sheila
Pridgon, Vernice
Rasheed, Dorothy
Reece, Patricia
Reese, Candice
Reynold-Perry, Sharon
Riffey, Pamela
Samuel-Pollard, Doris
Sims, Narcissus
Smith, Robert
Sorio, Emily

Stell, Dixie
Stephens, Velma
Stone, Andrea Dawn
Sutphin, Emma
Trisvan, Linda
Turner, Holly
Walton, Dorothy
Watson, Jeffery
White, Lois
Whiting, Pracilla
Wiggans, Linda
Wilkerson, Pamela
Willer, Gary
Williams, Beverly Ann
Wilson, Natasha
Wong, Shenia
Young, Vernon

1730649v1

**Schedule B**

<u>Organizational Identification Number (Section 6(b))</u>:  54-2018516

<u>Other Names used in Preceding 5 years (Section 6(b))</u>: None

<u>Litigation (Section 6(c))</u>: None

<u>Unpaid taxes and assessments and unfiled returns (Section 6(i))</u>: None

1730649v1

**Schedule C**

1. Loan and Security Agreement

2. Promissory Note

3. Guaranty (A. Donald McEachin)

4. UCC Financing Statement

5. Pay-Off Letters

   - **Oasis Legal Finance LLC**

6. UCC and Tax Lien Searches
   - Borrower
   - Guarantor

7. Certificate of Officer of Borrower
   - Exhibit A: Resolutions
   - Exhibit B: Articles of Incorporation
   - Exhibit C: Bylaws
   - Exhibit D: Certificate of Good Standing

8. Life Insurance Policies Issued by Nationwide Insurance in the amount of at least $1,300,000.

9. Assignment of Life Insurance Policy as Collateral

10. Advance Request and Payment Instructions

11. Payment of $19,500 Fee and Due Diligence expenses

12. Payment of Lender's Legal Fees

13. UCC Insurance

14. Due Diligence Materials
    - Schedule of Contingent Fee Agreements
    - Financial Statements
    - Contingent Fee Agreements
    - Other

15. Opinion of Borrower's Counsel

16. Notice to Lead Counsel, Acknowledged by Lead Counsel

17. Payment of Lender's Attorneys' Fees

18. Post-closing

    - [UCCs terminated]

1730649v1



CAPITAL TRANSACTION GROUP, INC.

## Personal Guarantee of Loan and Security Agreement

IN CONSIDERATION of and in order to induce **Capital Transaction Group, Inc.**, a South Carolina corporation (the "Lender") to enter into a Loan and Security Agreement dated January 27, 2005 executed by and between **The McEachin Law Firm, P.C.**, a Virginia professional corporation (the "Borrower"), and the Lender (the "Agreement"), **A. Donald McEachin** (the "Guarantor") hereby agrees as follows:

1.   The Guarantor unconditionally and absolutely guarantees to the Lender the full and prompt payment and performance by the Borrower of all of its obligations, now existing or hereafter arising, under and pursuant to the Agreement, the Note and each other Loan Document, together with the full and prompt payment of any and all costs and expenses of and incidental to the enforcement of this Guaranty, including, without limitation, reasonable attorneys' fees (collectively, the "Indebtedness"). Capitalized terms not otherwise defined in this Guaranty shall have the meanings given to them in the Agreement.

2.   The Guarantor waives (i) presentment, demand, notice of nonpayment, protest and notice of protest and dishonor of any instrument evidencing the Indebtedness; (ii) notice of acceptance of this Guaranty by the Lender; (iii) notice of the creation or incurrence of the Indebtedness by the Borrower; and (iv) all other demands and notices to the Guarantor or any other person and all other actions to establish the liability of the Guarantor hereunder.

3.   The Lender may at any time and from time to time, without the consent of or notice to the Guarantor, without incurring responsibility to the Guarantor, and without releasing, impairing or affecting the liability of the Guarantor hereunder, upon or without any terms or conditions, and in whole or in part: (1) sell, pledge, surrender, compromise, settle, release, renew, subordinate, extend, substitute, exchange, change, or otherwise dispose or deal with in any manner and in any order any Indebtedness, any evidence thereof, or any security therefor; (2) accept any security for or other guarantors of any Indebtedness; (3) fail, neglect or omit to obtain, realize upon or protect any Indebtedness or any security therefor, to exercise any lien upon or right to any money, credit or property, or to exercise any other right against the Borrower, the Guarantor or any other person, and (4) apply any payments and credits to the Indebtedness in any manner and in any order. No act or thing, except full payment of the Indebtedness, which but for this provision could act as a release or impairment of the liability of the Guarantor shall in any way release, impair or affect the liability of the Guarantor under this Guaranty. The Guarantor waives any and all defenses of the Borrower pertaining to the Indebtedness, any evidence thereof, and any security therefor, except the defense of discharge by payment. The Guarantor shall be and remain liable for any deficiency remaining after foreclosure of any mortgage or security interest securing the Indebtedness, whether or not the liability of the Borrower or any other person for such deficiency is discharged pursuant to statute, judicial decision or otherwise.

4.   This Guaranty shall remain in full force and effect and be binding upon the Guarantor until the Indebtedness is paid and performed in full.

5.   So long as any portion of the Indebtedness is due and owing or to become due and owing by the Borrower to the Lender, the Guarantor shall not, without the prior written consent of the Lender, collect or seek to collect from the Borrower the claim, if any, by subrogation or otherwise, acquired by the Guarantor or through payment of any part or all of the Indebtedness.

6.   The possession of this Guaranty by the Lender shall be conclusive evidence of its due execution and delivery by the Guarantor.

1



CAPITAL TRANSACTION GROUP, INC.

7.    This Guaranty shall be binding upon the legal representatives, successors and assigns of the Guarantor, and shall inure to the benefit of the Lender and its successors, assigns and legal representatives.

8.    This Guaranty is a primary obligation of the Guarantor and the Lender shall not be required first to resort for payment of the Indebtedness to the Borrower or any other person or their properties, or any security or other rights or remedies whatsoever.  The Guarantor may be joined in any action or proceeding commenced against the Borrower in connection with or based upon the Indebtedness and recovery may be had against the Guarantor in any such action or proceeding or in any independent action or proceeding against the Guarantor should the Borrower fail to duly and punctually pay and perform any of its obligations under the Loan Documents, without any requirement that the Lender first assert, prosecute or exhaust any remedy or claim against the Borrower.

9.    Each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of the Guaranty.  This Guaranty takes the place of any conversations or oral agreements.

10.   No failure on the part of the Lender to exercise, and no delay in exercising, any right or remedy hereunder shall operate as or constitute a waiver thereof; nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy granted hereby or by any related document or by law.

11.   If any payment applied by the Lender to the Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including without limitation the bankruptcy, insolvency or reorganization of the Borrower or any other person), the Indebtedness to which such payment was applied shall for the purposes of this Guaranty be deemed to have continued in existence, notwithstanding such application, and this Guaranty shall be enforceable as to such Indebtedness as fully as if such application or return had never been made.

12.   The Guarantor agrees that (i) the Guarantor will indirectly benefit by and from the Borrower entering into the Indebtedness by virtue of the fact that the Borrower is a principal shareholder of the Guarantor; (ii) the Guarantor has received legal and adequate consideration for the execution of this Guaranty and has executed and delivered this Guaranty to the Lender in good faith in exchange for reasonably equivalent value; (iii) the Guarantor is not presently insolvent and will not be rendered insolvent by virtue of the execution and delivery of this Guaranty; (iv) the Guarantor has not executed or delivered this Guaranty with actual intent to hinder, delay or defraud the Guarantor's creditors; (v) the Lender has entered into the Loan Documents and extended credit to the Borrower in reliance upon this Guaranty; and (vi) the Guarantor has independently evaluated the credit of the Borrower and is not in any way relying on any representations made by the Lender as to the Borrower, the Indebtedness or any collateral security therefor.

13.   The Guarantor represents to the Lender that the representations contained in Section 6 of the Agreement are true, that the Guarantor's residence is located at the address set forth below the Guarantor's signature to this Guaranty, and that during the preceding five years, the Guarantor has resided at no other address except _____.

14.   THIS GUARANTY HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AND SHALL AT ALL TIMES BE DEEMED TO HAVE BEEN MADE IN NORTH CAROLINA, WHICH IS THE LENDER'S PRINCIPAL

- 2 -



**CapTran**

CAPITAL TRANSACTION GROUP, INC.

PLACE OF BUSINESS. THE INDEBTEDNESS PROVIDED FOR UNDER THE AGREEMENT IS TO BE FUNDED TO BORROWER'S BANK ACCOUNT IN NORTH CAROLINA AND SHALL BE REPAID, WHETHER PURSUANT TO THE NOTE OR THE GUARANTY, TO LENDER'S BANK ACCOUNT IN NORTH CAROLINA. THE AGREEMENT OF THE PARTIES SET FORTH HEREIN SHALL BE PERFORMED IN NORTH CAROLINA AND THIS GUARANTY SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED, IN ACCORDANCE WITH THE INTERNAL SUBSTANTIVE LAWS OF THE STATE OF NORTH CAROLINA WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS AND THE LIKE. TO INDUCE LENDER TO MAKE THE LOAN TO THE BORROWER UNDER THE AGREEMENT, THE GUARANTOR HEREBY CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF NORTH CAROLINA AND WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS UPON THE GUARANTOR. THE GUARANTOR WAIVES ANY OBJECTION TO JURISDICTION AND VENUE OF ANY ACTION INSTITUTED HEREUNDER AND AGREES NOT TO ASSERT ANY DEFENSE BASED ON LACK OF JURISDICTION OR VENUE. THE GUARANTOR UNDERSTANDS THAT THE "CHOICE OF LAW," "FORUM" AND "VENUE" CLAUSES ARE CRITICAL IN NATURE, AND ARE ESSENTIAL TO THIS GUARANTY, AND THEY HAVE NOT BEEN PLACED IN THIS GUARANTY AS MERE "FORM" INSERTIONS AND RECITALS.

Dated as of this 27th day of January, 2005.

GUARANTOR: A. Donald McEachin

301 N. Wilkinson Rd

Richmond VA 23207

(Address)

WITNESS:

Name

Name

- 3 -