## Pigford Litigation Co-Counseling Agreement
## Among Farmers' Law Group of Connecticut LLC, Donald McEachin and
## McEachin & Gee Attorneys at Law LLP

This agreement ("Agreement") is entered into August 11, 2008 by and between Farmers' Law Group of Connecticut LLC ("FLG") and McEachin & Gee Attorneys at Law LLP ("M&G") and Donald McEachin (hereinafter collectively referred to as "Parties,") for the purpose of agreeing to and establishing a co-counseling arrangement for the purpose of investigating, filing and prosecuting civil actions brought under Section 14012 of the Food, Conservation, and Energy Act of 2008 (Public Law Number 110-234, herein referred to as the "Act") regarding the Pigford Claims Remedy Act of 2007 against the United States Agriculture Department relating to wrongful denial of farm loans to identifiable Pigford Claimants, as that term is defined by the Act (hereinafter referred to as the "Actions").

*Whereas*, M&G is involved in the representation of a number of Clients (as the term is defined herein) in Actions and holds the representation agreements for such Clients and various co-counsel agreements regarding the Clients, under which it is due compensation in the form of fees (collectively the "Pigford Claim Assets"): and

*Whereas*, Pursuant to the terms of a certain LOAN AND SECURITY AGREEMENT dated January 28, 2005, by and between Capital Transaction Group Inc., a South Carolina corporation on the one hand, and A. Donald McEachin, an individual and attorney-at-law, and The McEachin Law Firm, P.C., a Virginia professional corporation on the other hand, as such agreement has been and will be from time to time amended (the "Loan and Security Agreement"), A. Donald McEachin ("McEachin") and the McEachin Law Firm ("McLaw") are presently indebted to Fen-Phen Series 2005-01, in the amount of $2,639,662 as of August 10, 2008, which amount continues to accrue interest and other charges (the "Fen-Phen Debt"); and

*Whereas*, McLaw and McEachin are currently in breach of the Loan and Security Agreement, and it is understood by the parties that the Loan and Security Agreement shall be and hereby is amended to cure those breaches, such that additional interest of 15% per annum will be charged on the outstanding interest amount thereunder, and therefore the Fen-Phen Debt will be increased accordingly; and

*Whereas*, The McEachin Law Firm, P.C. is a member in M&G; and

*Whereas*, Donald McEachin is a member in M&G; and

*Whereas*, M&G is a Guarantor, under a Guarantee dated December 13, 2007, of the Fen-Phen Debt (the "2007 Guarantee"); and

*Whereas*, M&G is a Guarantor, under a Guarantee dated June 19 2008, of an additional $50,000 debt to Fen-Phen Series 2005-01 (the "2008 Guarantee"); and

*Whereas*, M&G under that certain Services Agreement between M&G and Sidebar NC LLC, dated June 7, 2007 (the "Sidebar Service Agreement") is indebted to Sidebar NC LLC in the amount of $300,000; and

Page 1



*Whereas,* M&G under that certain Termination of Services Agreement among The Pogust Law Firm, LLC, M&G and CapTran DE LLC, dated December 7, 2007 (the "Pogust Termination Agreement") is indebted to CapTran DE LLC in the amount of $230,000; and

*Whereas,* McLaw desires that FLG undertake and indemnify McLaw for all of McLaw's responsibilities and obligations under the Fen-Phen Debt; and

*Whereas,* M&G desires that FLG undertake and indemnify M&G for all of M&G's responsibilities and obligations under the 2007 Guarantee, under the 2008 Guarantee, under the Sidebar Service Agreement and under the Pogust Termination Agreement, as well as desiring that FLG perform financing and business operations pertaining to the representation of Clients pursuant to the terms of this Agreement; and

*Whereas,* Donald McEachin desires that FLG undertake and indemnify him for all of his responsibilities and obligations under the Fen-Phen Debt, including his personal guarantees, pursuant to the terms of this Agreement and FLG is willing to do so ; and

*Whereas,* the Parties wish to associate themselves as co-counsel for the purpose of prosecuting the Actions and accomplishing the aforesaid;

*Now therefore,* in consideration of the mutual covenants as stated herein, the parties do herby covenant and agree to the following terms and conditions:

1. **Co-Counseling.** The Parties hereby agree to associate as co-counsel for the purpose of prosecuting the Actions, subject to the terms of this Agreement. The objective of this co-counsel Agreement is to identify and pursue Actions allowed by the Act on behalf of claimants defined by the Act. The "Clients" shall be those Pigford Claimants as defined by the Act. No party may proceed on behalf of a Client on an individual basis, and separate and apart from the other party. Further, if M&G believes it has any other case substantially related to the matters involved in this Agreement, it must bring the matter to FLG for a decision as to whether FLG will undertake that matter as well, before M&G, may proceed on an individual basis. Breach by any party of this Paragraph 1 shall be subject to and incur liquidated damages in favor of the non-breaching party in the amount of $500,000.

2. **Joint Representation.** The Parties agree that they shall act jointly as Co-Counsel in the Actions, and all communications between them and any other co-counsel shall be privileged and confidential.

3. **M&G Duties.** M&G shall have primary responsibility for Client education and acquisition.

4. **FLG Duties.**

   a. FLG shall have primary responsibility for business operations and financial arrangements.

   b. The parties recognize that M&G has, by prior written agreements, associated additional counsel to fulfill the duties set forth below:

      i. Performing all client communication including coordinating meetings between Clients and the Parties;

      ii. Keeping Clients reasonably informed of the status of the Actions and respond to the Clients' reasonable requests for information;

Page 2

    iii.  Making required appearances at Case Management Conferences, and file required papers with the Court;

    iv.  Maintaining a database with all relevant client and case management records and information.

    v.  Negotiating any bulk settlement and ensuring that all filings and other actions occur in a timely fashion;

    vi.  Coordinating responsibility for court appearances, including responsibility for preparation for the appearances.

FLG shall undertake responsibility for communications and business dealings with other co-counsel, including but not limited to the Law Office of James Scott Farrin ("Farrin"), Pogust, Braslow and Millrood, LLC ("Pogust"), the Law Offices of Chestnut, Sanders, Sanders, Pettaway & Campbell, LLC ("Chestnut"), Conlon, Frantz & Phelan, LLP ("Conlon") and Law Office of Phillip L. Fraas ("Fraas").

5. **Access to Case Files**. M&G agrees to permit the principals of FLG access to all files records, documents and reports, in any format, in its possession and to which it has access regarding the Actions.

6. **Duties and Responsibilities.** Subject to any limitation in Sections 3 and 4 above, the Parties shall share in all duties and responsibilities relevant to the prosecution of the Actions as is reasonably practicable and necessary, including the formulation of strategy, preparation of pleadings and other documents, attendance at courtroom proceedings, as necessary, and all other aspects of the Actions. The Parties understand that while they shall share in such duties and responsibilities, their primary roles in those duties and responsibilities shall be as set forth above, due to various other co-counsel arrangements.

7. **Contingency Fee.** The Parties agree to pursue the Actions on a contingency fee basis. Each Client has signed or shall sign a Contingent Fee Agreement stipulating a contingency fee up to one-third (1/3) of the recovery for each Client and allowing for fee splitting among counsel as appropriate.

8. **Other Fees.** The Parties, if appropriate, shall request attorney's fees and expenses pursuant to the Equal Credit Opportunity Act, 15 U.S.C. Sec 1691 e (d) as amended; the Equal Access to Justice Act, as amended; APA 28 USC 2412 (d), as appropriate; the Civil Rights Act 42 U.S. C Sec. 1988, as amended for any cost of the Actions and any applicable interests that are generated with the filing of the Actions and the implementation of a Consent Decree, if any.

9. **Expenses.** Travel and entertainment expenses for the Parties shall be limited to commercial coach fares, and meals and hotels limited to the Federal per diem rates or entertainment rates.

10. **Expense records.** The Parties each shall be responsible for maintaining their own appropriately-detailed contemporaneous time and expense records in anticipation of a subsequent motion for recovery of attorneys' fees, costs and expenses. If the Actions are successful, the Parties shall file joint motions for recovery of attorneys' fees, costs and expenses incurred in pursuing the Actions.

    a.  The Parties agree to disclose their time and expense records to each other at any time upon request.

Page 3

b. The Parties shall bill their time at the normal hourly rates.

11. <u>Calculation of Fee.</u> Fees, costs and expenses recovered with respect to the Actions including, without limitation, any class counsel or MDL fees awarded to any Party (whether directly or through other co-counsel arrangements regarding the Clients) ("Fees"), will be divided according to the provisions of this paragraph 11.

That certain Pigford Litigation Co-Counseling Agreement Between James S. Farrin, PC and McEachin & Gee Attorneys at Law LLP, dated December 14, 2007 (as that Pigford Litigation Co-Counseling Agreement Between James S. Farrin, PC and McEachin & Gee Attorneys at Law LLP, dated December 14, 2007 was executed <u>on that date</u>, and regardless of and without reference to any subsequent or future amendments thereto) shall be referred to herein as the "Farrin Co-Counsel Agreement."

The "Existing 19.5% Farrin Split" shall mean, with reference to the Farrin Co-Counsel Agreement, an amount equal to the ratable 19.5% split of "Fees, costs and expenses recovered with respect to the ACTIONS, including, without limitation, any class counsel or MDL fees awarded to any PARTY," specified in paragraph 12(d) of the Farrin Co-Counsel Agreement as owing to M&G ("CO-COUNSEL" therein) after application of paragraphs 12(a), 12(b) and 12(c) of the Farrin Co-Counsel Agreement.

Fees shall be divided as follows:

a. An amount that is equal to the Existing 19.5% Farrin Split shall be divided as follows:

    i. First, to FLG until it has received an amount sufficient to defray all costs of repaying all amounts due under the Fen-Phen Debt;

    ii. Second, to FLG until it has received an amount sufficient to defray all costs of repaying the "Secondary Debt," which shall mean the sum of all amounts due under the Pogust Termination Agreement plus all amounts due under the Sidebar Service Agreement plus any and all amounts due under the 2008 Guarantee.

    iii. Third to FLG in an amount equal to a full 5 percentage points of the 19.5 percentage points represented by the Existing 19.5% Farrin Split, or twenty-five and six hundred forty-one one-thousandths percent (25.641%) of the Existing 19.5% Farrin Split;

    iv. Then the remainder of the Existing 19.5% Farrin Split to M&G.

b. All other Fees shall be paid 100% to FLG.

12. <u>Undertaking of Obligations.</u> As consideration for this Agreement;

a. FLG hereby agrees to undertake all responsibilities and obligations of M&G under the 2007 Guarantee and indemnify and hold M&G and each of its successors, transferees, participants, assigns, affiliates, partners, members, managers and all officers, directors, shareholders, controlling persons, employees, attorneys, representatives and agents of any of M&G, harmless as against all claims of any creditor under the 2007 Guarantee.

b. FLG hereby agrees to undertake all responsibilities and obligations of M&G under the 2008 Guarantee and indemnify and hold M&G and each of its successors, transferees, participants, assigns, affiliates, partners, members, managers and all officers, directors,

shareholders, controlling persons, employees, attorneys, representatives and agents of any of M&G, harmless as against all claims of any creditor under the 2008 Guarantee.

c. FLG hereby agrees to undertake all responsibilities and obligations of McLaw under the Loan and Security Agreement and indemnify and hold McLaw and each of its successors, transferees, participants, assigns, affiliates, partners, members, managers and all officers, directors, shareholders, controlling persons, employees, attorneys, representatives and agents of McLaw, harmless as against all claims of any creditor under the Loan and Security Agreement.

d. FLG hereby agrees to undertake all responsibilities and obligations of Donald McEachin under the Loan and Security Agreement and all personal guarantees by Donald McEachin associated with that Loan and Security Agreement, and to indemnify and hold Donald McEachin harmless as against all claims of any creditor under the Loan and Security Agreement or any personal guarantee by Donald McEachin associated therewith.

e. FLG hereby agrees to undertake the responsibility and obligation of M&G under the Pogust Termination Agreement to pay $230,000 to CapTran DE LLC, and to indemnify and hold M&G and each of its successors, transferees, participants, assigns, affiliates, partners, members, managers and all officers, directors, shareholders, controlling persons, employees, attorneys, representatives and agents of M&G harmless as against all claims of any creditor under the Pogust Termination Agreement.

f. FLG hereby agrees to undertake the responsibility and obligation of M&G under the Sidebar Service Agreement to pay $300,000 to Sidebar NC LLC, and to indemnify and hold M&G and each of its successors, transferees, participants, assigns, affiliates, partners, members, managers and all officers, directors, shareholders, controlling persons, employees, attorneys, representatives and agents of M&G harmless as against all claims of any creditor under the Sidebar Service Agreement.

g. FLG hereby agrees that it shall refrain from and shall cause its principals, members, agents and affiliates to refrain from using or referring in any manner to M&G, Donald McEachin or Donald Gee in any marketing efforts in support of any shared benefit plan for Clients or other claimants under the Act.

13. **Transfer of Pigford Claim Assets.** M&G hereby transfers to FLG 99% of all rights, title and interest it has in the Pigford Claim Assets including, but not limited to, all rights, title and interest M&G has to all fees due to M&G pursuant to all retainer agreements, co-counsel arrangements or any similar arrangements that involve any and all Pigford Claim Assets.

14. **Option to Purchase M&G.**

   a. M&G hereby grants FLG the option, for a period of three years from the date hereof (the "Option Period"), to purchase up to 100% of membership/partnership interests of M&G, including all remaining assets (the "Option"), for the sum of $100 (the "Option Payment"). The Option may be exercised in increments over the Option Period, upon pro-rata payment of the Option Payment. At the time that the entire Option Payment has been tendered by FLG, the Option shall be considered Fully Exercised by FLG.

   b. During the Option Period, FLG shall be and is hereby appointed to act as Business Manager of M&G, with full executive powers. M&G agrees not to take any business or

Case 1:09-cv-00479-JAB -WWD   Document 1-6   Filed 07/02/09   Page 5 of 8

FLG - M&G Co-Counsel Agreement

financial action without written permission from FLG. Notwithstanding the foregoing. it is understood and agreed that an amount of up to $100,000 per year (the first such year beginning on the date even herewith and ending August 10, 2009 and each subsequent year beginning on August 11) may be spent by M&G on client acquisition and education costs without prior written permission from FLG. Breach of this subparagraph (b) by M&G or its principals shall result in payment by M&G of five hundred thousand dollars ($500,000) liquidated damages to FLG.

c. In the event that the Option becomes Fully Exercised;

    i. FLG agrees that it will change the name of the firm such that it does not include the names of McEachin or Gee.

    ii. The Parties agree that the Fees due to M&G under paragraph 11(a)(iv) hereof shall be paid to McLaw, and that McLaw shall, upon such payment, undertake full responsibility for all obligations of M&G under the terms of paragraph 11 of that certain Referral and Of Counsel Agreement dated December 14, 2007 by and between McEachin & Gee Attorneys at Law LLP, A. Donald McEachin, The McEachin Law Firm P.C and Donald Gee, and

    iii. McLaw and McEachin shall be responsible for any tax liability incurred prior to the date that the Option becomes Fully Exercised.

15. **Conditions Precedent to Closing.** The parties agree that the following events must occur either prior to or contemporaneously with the execution of this Agreement in order for its provisions to be binding:

a. Execution of an agreement among Fen Phen 2005-01. M&G. Donald McEachin, McLaw and FLG which authorizes FLG's undertaking of the Fen-Phen Debt and the guarantees thereof and grants all parties mutual releases.

b. Execution of an agreement (or agreements) between Law Capital Fund 1 and Hamilton Realty Company, A Virginia Corporation, under which Law Capital Fund 1 grants 6 months forbearance from demanding payment and includes an option for Donald McEachin (or his assigns) to buy the Law Capital mortgage within 6 months at 90% accrued value of note.

c. Return by Fen Phen 2005-01 and affiliates. other than Law Capital Fund 1, a Series of CapTran Funding I.LC. of all documents and files in their possession, except for the original Loan and Security Agreement within 10 days of execution date.

16. **Liability for Professional Negligence.** The Parties assume no liability for each other's professional negligence.

17. **Amendment.** This Agreement may be amended only with the express written in consent of all Parties.

18. **Partial Invalidity.** The unenforceability or invalidity of any provision of this Agreement shall not affect the enforceability or validity of any other provision herein or therein.

19. **Waiver.** No term, condition or requirement of this Agreement may be waived or modified except in writing by both parties hereto.

20. **Counterparts.** This Agreement may be executed in multiple counterparts. Each of the counterparts will be considered an original and all counterparts constitute one and the same Agreement.

Page 6

Case 1:09-cv-00479-JAB -WWD   Document 1-6   Filed 07/02/09   Page 6 of 8

21. **Recitals.** The Recitals (Whereas clauses) to this Agreement are to be read as part of this Agreement and are specifically incorporated herein.

22. **Notices.** Notices to be given hereunder shall be in writing addressed to the appropriate party at the address set forth below, and may be delivered or sent via reputable courier, facsimile transmission, email or U.S. Mail.

> To M&G, McLaw or McEachin
>
> Donald McEachin
> McEachin & Gee Attorneys at Law LLP
> 5905 West Broad Street
> Richmond, VA 23230
> Tel: 804-288-3381
> Facsimile: 804-285-2042
> Email: dmceachin@mceachingee.com
>
>
> To FLG:
>
> Jeff King
> Farmers' Law Group of Connecticut, LLC
> 57 Deerwood Lane
> Pinehurst, North Carolina, 28374
> Tel: 910-315-9271
> Email: jking@farmerslawgroupct.com

23. **Choice of Law.** This Agreement shall be governed by and construed in accordance with the laws of the state of Virginia. The parties acknowledge that this Agreement evidences a transaction involving interstate commerce. The United States Arbitration Act shall govern the interpretation, enforcement, and proceedings pursuant to the arbitration clause in this Agreement.

24. **ARBITRATION.** ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE DOCUMENTS PROVIDED FOR HEREIN (INCLUDING ANY MODIFICATIONS HEREOF OR THEREOF) SHALL BE SETTLED BY ARBITRATION IN RICHMOND, VIRGINIA ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION IN ACCORDANCE WITH ITS COMMERCIAL ARBITRATION RULES, AND JUDGMENT UPON ANY AWARD MAY BE ENTERED IN ANY COURT OF COMPETENT JURISDICTION. THE ARBITRATOR(S) IN ANY SUCH CONTROVERSY SHALL HAVE NO POWER TO ALTER OR MODIFY ANY EXPRESS PROVISION OF THIS AGREEMENT OR ANY OF THE DOCUMENTS PROVIDED FOR HEREIN OR TO RENDER ANY AWARD THAT DIRECTLY OR INDIRECTLY EFFECTS ANY SUCH ALTERATION. THE PARTIES CONSENT TO THE APPLICATION FEDERAL ARBITRATION STATUTES AND TO THE JURISDICTION OF THE SUPREME COURT OF VIRGINIA OR THE FEDERAL DISTRICT COURT IN VIRGINIA, AS THE CASE MAY BE, FOR ALL PURPOSES IN CONNECTION WITH THIS AGREEMENT TO ARBITRATE. EACH PARTY TO ANY SUCH ARBITRATION OR COURT PROCEEDING SHALL BEAR ITS OWN ATTORNEYS' FEES AND OTHER COSTS. EACH PARTY

Page 7

HERETO SHALL ALSO HAVE ALL RIGHTS TO PROVISIONAL REMEDIES THAT HE OR IT WOULD HAVE AT LAW OR EQUITY, NOTWITHSTANDING THE EXISTENCE OF THIS AGREEMENT TO ARBITRATE.

25. **Descriptive Headings.** The Descriptive headings of the Agreement are inserted for convenience only and do not constitute a substantive part of this Agreement. The use of the word "including" in this Agreement shall be by way of example rather than by limitation.

26. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties and there are no representations, warranties, covenants, or obligations except as set forth herein. This Agreement supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to any transaction contemplated by this Agreement. This Agreement shall be binding on, and inure to the benefit of the parties hereto and their heirs, successors and assigns.

IN WITNESS WHEREOF, the parties hereto affix their signatures.

Dated: August 11, 2008

Farmers' Law Group of Connecticut LLC

Dated: August 11, 2008

McEachin & Gee Attorneys at Law LLP

By: _____

Its: Member

By: _____

Its: _Managing Member_

Dated: August 11, 2008

Donald McEachin

Page 8