## Acceptance and Acknowledgement of Assignment and Assumption of Debt and Mutual Release

This agreement ("Agreement") is entered into August 11, 2008 by and between Fen-Phen Series 2005-01, a Series of CapTran Funding LLC ("Lender"), Farmers' Law Group of Connecticut LLC ("FLG"), McEachin & Gee Attorneys at Law LLP ("M&G"), the McEachin Law Firm, P.C. ("McLaw"), and A. Donald McEachin ("McEachin") (hereinafter collectively referred to as "Parties").

*Whereas*, Pursuant to the terms of a certain LOAN AND SECURITY AGREEMENT dated January 28, 2005, by and between Capital Transaction Group Inc., a South Carolina corporation on the one hand, and A. Donald McEachin, an individual and attorney-at-law, and The McEachin Law Firm, P.C., a Virginia professional corporation on the other hand, as such agreement has been or will be from time to time amended (the "Loan and Security Agreement"), McEachin and the McLaw are presently indebted to Fen-Phen Series 2005-01, in the amount of $2,639,662 as of August 10, 2008; and

*Whereas*, McLaw is a member in M&G; and

*Whereas*, McEachin is a member in M&G; and

*Whereas*, M&G is a Guarantor, under a Guarantee dated December 13, 2007, of the Fen-Phen Debt (the "2007 Guarantee"); and

*Whereas*, M&G is a Guarantor, under a Guarantee dated June 19, 2008, of the Fen-Phen Debt (the "2008 Guarantee"); and

*Whereas*, McLaw and McEachin are currently in breach of the Loan and Security Agreement and it is understood by the parties that the Loan and Security Agreement will be amended to cure those breaches, once this Agreement is in place, such that additional interest of 15% per annum will be charged on the outstanding interest amount thereunder, and that the total of that 15% per annum interest on the outstanding interest plus the $2,639,662 now due under the Loan and Security Agreement plus all interest thereon that will continue to accrue at the rate of 4% per month constitute the "Fen-Phen Debt"); and

*Whereas*, M&G, McEachin and FLG are prepared to sign a Pigford Litigation Co-Counseling Agreement dated even herewith in the form that is attached as Exhibit A hereto (the "FLG Co-Counsel Agreement") under which FLG agrees, in exchange for the co-counseling arrangement as stated therein, to undertake and indemnify M&G for all of M&G's responsibilities and obligations under the Guarantee, and to undertake and indemnify McEachin and McLaw for all of their responsibilities and obligations under the Loan and Security Agreement, including personal guarantees thereof; and

*Whereas*, Lender and FLG have agreed to terms under which Lender will allow FLG to undertake the Fen-Phen Debt and all obligations under the Loan and Security Agreement, subject to the execution of this Agreement, FLG Co-Counsel Agreement;

*Now therefore,* in consideration of the mutual covenants as stated herein, the parties do herby covenant and agree to the following terms and conditions:



1. Subject to the terms of this Agreement and pursuant to those of the FLG Co-Counsel Agreement;
    a. Lender agrees to allow FLG to, and FLG agrees to undertake all responsibilities and obligations of M&G under the 2007 Guarantee and indemnify and hold M&G and each of its successors, transferees, participants, assigns, affiliates, partners, members, managers and all officers, directors, shareholders, controlling persons, employees, attorneys, representatives and agents of any of M&G, harmless as against all claims of any creditor under the 2007 Guarantee.
    b. Lender agrees to allow FLG to, and FLG agrees to undertake all responsibilities and obligations of M&G under the 2008 Guarantee and indemnify and hold M&G and each of its successors, transferees, participants, assigns, affiliates, partners, members, managers and all officers, directors, shareholders, controlling persons, employees, attorneys, representatives and agents of any of M&G, harmless as against all claims of any creditor under the 2008 Guarantee.
    c. Lender agrees to allow FLG to, and FLG agrees to undertake all responsibilities and obligations of McLaw under the Loan and Security Agreement and indemnify and hold McLaw and each of its successors, transferees, participants, assigns, affiliates, partners, members, managers and all officers, directors, shareholders, controlling persons, employees, attorneys, representatives and agents of McLaw, harmless as against all claims of any creditor under the Loan and Security Agreement.
    d. Lender agrees to allow FLG to, and FLG agrees to undertake all responsibilities and obligations of Donald McEachin under the Loan and Security Agreement and all personal guarantees by Donald McEachin associated with that Loan and Security Agreement, and to indemnify and hold Donald McEachin harmless as against all claims of any creditor under the Loan and Security Agreement or any personal guarantee by Donald McEachin associated therewith.
    e. Lender agrees to release all collateral pledged concerning the Loan and Security Agreement except for any and all matters regarding civil actions brought under Section 14012 of the Food, Conservation, and Energy Act of 2008 (Public Law Number 110-234, herein referred to as the "Act") regarding the Pigford Claims Remedy Act of 2007 against the United States Agriculture Department relating to wrongful denial of farm loans to identifiable Pigford Claimants, as that term is defined by the Act, and all fee agreements associated therewith, as well as fees due to McLaw, M&G, FLG and McEachin under any such fee agreements.
    f. Lender agrees to, and shall cause all affiliates of Lender, with the exception of Law Capital Fund 1, a Series of CapTran Funding L.L.C., to return all documents, files and audio recordings in such entity's possession regarding the parties (other than FLG), except for the Loan and Security Agreement, to the respective parties or their agents.

Page 2

2. Lender, and all of its assigns, successors, employees, heirs, distributees, agents, representatives, partners, members, officers, directors, parents, subsidiaries, and related entities, hereby releases, acquits, and forever discharges McLaw, M&G, McEachin and all of their assigns, successors, employees, heirs, distributees, agents, representatives, partners, members, officers, directors, parents, subsidiaries, and related entities from any and all actions, causes of action, claims, demands, damages, costs, expenses, fees, interest and compensation, whether known or unknown, asserted or unasserted, that have existed since the beginning of time up to, and including, the date of the execution of this mutual release, relating to any conceivable dispute, topic or subject matter whatsoever, including, but not limited to, the Loan and Security Agreement, the Fen-Phen Debt and guarantees thereof. Notwithstanding the foregoing, it is expressly agreed that this paragraph shall not be construed to include any release to be provided by Law Capital Fund 1, a Series of CapTran Funding LLC and also shall not be construed to include any release provided to Hamilton Realty Company.

3. McLaw, and all of its assigns, successors, employees, heirs, distributees, agents, representatives, partners, members, officers, directors, parents, subsidiaries, and related entities, hereby releases, acquits, and forever discharges Lender and all of its assigns, successors, employees, heirs, distributees, agents, representatives, partners, members, officers, directors, parents, subsidiaries, and related entities from any and all actions, causes of action, claims, demands, damages, costs, expenses, fees, interest and compensation, whether known or unknown, asserted or unasserted, that have existed since the beginning of time up to, and including, the date of the execution of this mutual release, relating to any conceivable dispute, topic or subject matter whatsoever, including, but not limited to, the Loan and Security Agreement, the Fen-Phen Debt and guarantees thereof. Notwithstanding the foregoing, it is expressly agreed that this paragraph shall not be construed to include any release to be provided to Law Capital Fund 1, a Series of CapTran Funding LLC.

4. M&G, and all of its assigns, successors, employees, heirs, distributees, agents, representatives, partners, members, officers, directors, parents, subsidiaries, and related entities, hereby releases, acquits, and forever discharges Lender and all of its assigns, successors, employees, heirs, distributees, agents, representatives, partners, members, officers, directors, parents, subsidiaries, and related entities from any and all actions, causes of action, claims, demands, damages, costs, expenses, fees, interest and compensation, whether known or unknown, asserted or unasserted, that have existed since the beginning of time up to, and including, the date of the execution of this mutual release, relating to any conceivable dispute, topic or subject matter whatsoever, including, but not limited to, the Loan and Security Agreement, the Fen-Phen Debt and guarantees thereof. Notwithstanding the foregoing, it is expressly agreed that this paragraph shall not be construed to include any release to be provided to Law Capital Fund 1, a Series of CapTran Funding LLC.

Page 3

5. McEachin, and all of his assigns, successors, heirs, distributees, agents and representatives, hereby releases, acquits, and forever discharges Lender and all of its assigns, successors, employees, heirs, distributees, agents, representatives, partners, members, officers, directors, parents, subsidiaries, and related entities, from any and all actions, causes of action, claims, demands, damages, costs, expenses, fees, interest and compensation, whether known or unknown, asserted or unasserted, that have existed since the beginning of time up to, and including, the date of the execution of this mutual release, relating to any conceivable dispute, topic or subject matter whatsoever, including, but not limited to, the Loan and Security Agreement, personal guarantees and the Fen-Phen Debt. Notwithstanding the foregoing, it is expressly agreed that this paragraph shall not be construed to include any release to be provided to Law Capital Fund 1, a Series of CapTran Funding LLC.

6. It is expressly understood and agreed that this release shall constitute a general release and shall be interpreted liberally to effectuate the maximum protection to the released parties allowed by law.

7. Donald McEachin and McLaw each agree that he or it shall not resign from or leave M&G prior to the earlier of 1) the date that is three years from the date hereof; and 2) the date that FLG exercises the option to buy granted to it in section 14 of the FLG Co-Counsel Agreement..

8. The parties agree that a material breach by M&G or McEachin under the FLG Co-Counsel Agreement shall constitute an event of default under this Agreement, resulting in the nullification of releases granted by Lender hereunder.

9. This Agreement constitutes the entire agreement and understanding between all of the parties, and replaces, cancels and supersedes any and all other or prior agreements, understandings or undertakings of the parties with respect to the subject matter hereof. It is also acknowledged and agreed that each party, with the assistance of counsel, has participated in the drafting of this Agreement and that any claimed ambiguity shall not be construed either for or against any party on account of such drafting.

10. All of the parties warrant and represent that they have been represented by legal counsel during the negotiations resulting in this Agreement and that they have entered into this Agreement without duress.

11. All of the parties confirm that the consideration stated herein is adequate consideration for this Agreement and that such consideration is contractual and not a mere recital.

12. All of the parties have entered into this Agreement based upon independent investigations and not based upon any representations or agreements made by any

Page 4

other party hereto, except those representations, undertakings and agreements which are specifically set forth herein.

13. All of the parties represent and warrant to each other that the Agreement has been duly authorized and that the person or persons executing this Agreement is authorized to do so on behalf of their respective party.

14. This Agreement may be executed in counterparts, and any number of counterparts signed in the aggregate by the parties will constitute a single, original agreement.

15. The Recitals to this Agreement are to be read as part of this Agreement and are specifically incorporated herein.

16. This Agreement shall be governed by and construed in accordance with the laws of the state of North Carolina. The parties acknowledge that this Agreement evidences a transaction involving interstate commerce. The United States Arbitration Act shall govern the interpretation, enforcement, and proceedings pursuant to the arbitration clause in this Agreement.

17. The unenforceability or invalidity of any provision of this Agreement shall not affect the enforceability or validity of any other provision herein or therein.

18. No term, condition or requirement of this Agreement may be waived or modified except in writing by all parties hereto.

19. **ARBITRATION.** ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE DOCUMENTS PROVIDED FOR HEREIN (INCLUDING ANY MODIFICATIONS HEREOF OR THEREOF) SHALL BE SETTLED BY ARBITRATION IN RALEIGH, NORTH CAROLINA ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION IN ACCORDANCE WITH ITS COMMERCIAL ARBITRATION RULES, AND JUDGMENT UPON ANY AWARD MAY BE ENTERED IN ANY COURT OF COMPETENT JURISDICTION. THE ARBITRATOR(S) IN ANY SUCH CONTROVERSY SHALL HAVE NO POWER TO ALTER OR MODIFY ANY EXPRESS PROVISION OF THIS AGREEMENT OR ANY OF THE DOCUMENTS PROVIDED FOR HEREIN OR TO RENDER ANY AWARD THAT DIRECTLY OR INDIRECTLY EFFECTS ANY SUCH ALTERATION. THE PARTIES CONSENT TO THE APPLICATION FEDERAL ARBITRATION STATUTES AND TO THE JURISDICTION OF THE SUPREME COURT OF NORTH CAROLINA OR THE FEDERAL DISTRICT COURT IN NORTH CAROLINA, AS THE CASE MAY BE, FOR ALL PURPOSES IN CONNECTION WITH THIS AGREEMENT TO ARBITRATE. EACH PARTY TO ANY SUCH ARBITRATION OR COURT PROCEEDING SHALL BEAR ITS OWN ATTORNEYS' FEES AND OTHER COSTS. EACH PARTY HERETO SHALL ALSO HAVE ALL RIGHTS TO PROVISIONAL REMEDIES THAT HE OR IT WOULD HAVE AT LAW OR EQUITY, NOTWITHSTANDING THE EXISTENCE OF THIS AGREEMENT TO ARBITRATE.

Acceptance and Acknowledgement of Assignment and Assumption of Debt and Mutual Release

IN WITNESS WHEREOF, the parties hereto affix their signatures.

Dated: August 11, 2008
Fen-Phen 2005-01

By: *[signature: Wayne C. Walker]*
Its: President of the SERIES MANAGER

Dated: August 11, 2008
The McEachin Law Firm PC

By: *[signature]*
Its: President

Dated: August 11, 2008
Donald McEachin

*[signature]*

Dated: August 11, 2008
McEachin & Gee Attorneys at Law LLP

By: *[signature]*
Its: Managing Member

Dated: August 11, 2008
Farmers' Law Group of Connecticut LLC

*[signature: Jeffrey King]*
By:
Its: Member