IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FEN-PHEN SERIES 2005-01, a )
series of CAP TRAN FUNDING, )
LLC, )
    )
    Plaintiff, )
    )                             **MEMORANDUM OPINION**
v. )                              **AND RECOMMENDATION**
    )
JAMES S. FARRIN, P.C., )          1:09CV479
    )
    Defendant. )

This matter is before the court on Defendant James S. Farrin, P.C.'s ("Defendant") motion to dismiss (docket no. 8). The motion challenges Plaintiff Fen-Phen Series 2005-01, a series of Cap Tran Funding, LLC's ("Plaintiff") claims for: (1) breach of contract as an alleged third-party beneficiary; (2) tortious interference with contract; and (3) unfair and deceptive trade practices, and it seeks an order from the court dismissing those claims. Plaintiff has responded to the motion, and, in this posture, the matter is ripe for disposition. Furthermore, the parties have not consented to the jurisdiction of the magistrate judge; thus, the motion must be addressed by recommendation. For the following reasons, it will be recommended that the court grant Defendant's motion to dismiss Plaintiff's claims.

**Background**

This lawsuit arises out of a co-counseling agreement between Defendant James S. Farrin, P.C. and McEachin and Gee Attorneys at Law, LLP ("M&G"), to

which Plaintiff claims to be a third-party beneficiary. On July 2, 2009, Plaintiff filed a complaint in this court based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Defendant has filed a motion to dismiss Plaintiff's complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**Alleged Facts**[1]

Defendant James S. Farrin, P.C., is a Durham, North Carolina law firm specializing in personal injury litigation. Plaintiff "Fen-Phen Series 2005-01, a series of Cap Tran Funding, LLC" is a Delaware limited liability company that arranges financing for class action lawsuits. Plaintiff is an assignee to a loan and security agreement entered into on January 27, 2005, between Capital Transaction Group and McEachin Law Firm, P.C., referred to as the "Fen-Phen Agreement." (Compl. ¶ 6, docket no. 10.) Pursuant to this agreement, Capital Transaction Group loaned McEachin Law Firm $1,300,000 secured by a promissory note and security interests in McEachin Law Firm's accounts, including anticipated legal fees from the Fen-Phen litigation. (*Id.* ¶ 7.) In addition, McEachin Law Firm's president, A. Donald McEachin, personally guaranteed his firm's performance under the Fen-Phen Agreement. (*Id.* ¶ 10.)

Plaintiff alleges that in late 2005, it became apparent that McEachin Law Firm was going to default on its payment obligations to Capital Transaction Group under

---

[1] The alleged facts are taken as true for the purpose of the pending motion, and I recite only those alleged facts relevant to the pending motion.

the Fen-Phen Agreement. Plaintiff alleges that Capital Transaction Group and McEachin Law Firm began negotiations to give Capital Transaction Group additional collateral for the amounts owed under the Fen-Phen Agreement. (*Id.* ¶ 11.) Around the same time, A. Donald McEachin formed a partnership with Donald Gee and organized the firm of McEachin and Gee Attorneys at Law, LLP ("M&G"). (*Id.* ¶ 14.) M&G thereafter became involved with the so-called "Pigford Litigation," a class action civil rights case brought by black farmers who alleged they were denied loans and subsidies by the United States Department of Agriculture. (*Id.* ¶ 13.) Plaintiff alleges that McEachin raised the possibility of generating additional collateral on the amount owed to Capital Transaction Group from the expected legal fees from the "Pigford Litigation." (*Id.* ¶ 12.)

On or around July 9, 2007, M&G and Defendant James S. Farrin executed a letter of intent to serve as co-counsel for the Pigford litigation claims. Plaintiff alleges that, at this time, Defendant became aware of M&G's payment obligations to Plaintiff under the Fen-Phen Agreement. (*Id.* ¶ 19.) The negotiations related to the project's financing failed, however, and M&G subsequently executed a co-counseling agreement with the law firm of Pogust & Braslow, LLC ("Pogust"). (*Id.* ¶ 20.) After learning that M&G had executed a co-counseling agreement with Pogust, Defendant then induced M&G to agree to enter into a new co-counseling agreement with Defendant. When Pogust learned that M&G intended to breach the co-counsel agreement with Pogust, Pogust threatened to sue M&G for breach of contract. M&G

-3-

Case 1:09-cv-00479-JAB -WWD   Document 15   Filed 04/28/10   Page 3 of 14

thereafter entered into a settlement agreement with Pogust, allowing Pogust to assume 6,000 of the 40,000 Pigford claims held by M&G. Plaintiff alleges that this settlement agreement caused a significant reduction in the collateral subject to the Fen-Phen agreement. (*Id.* ¶ 24.)

On December 14, 2007, Defendant and M&G entered into a co-counseling agreement regarding the remaining Pigford claimants. (*Id.* ¶ 25.) Plaintiff alleges that, pursuant to this agreement, Defendant was scheduled to make several payments to M&G that were designed to help M&G pay off its debt to Plaintiff. Plaintiff alleges that these payments should have totaled at least $900,000, but that Defendant never paid the money to M&G. (*Id.* ¶ 30.) Later, on July 9, 2008, Defendant and M&G entered into a revised co-counsel agreement involving themselves and additional law firms. (*Id.* ¶ 28.) On August 11, 2008, M&G entered into an agreement with Farmers' Law Group of Connecticut, LLC ("Farmers"), providing that Farmers agreed to undertake and indemnify M&G for all of its obligations and debts to Plaintiff in exchange for Farmers' rights to a portion of the fees generated from the Pigford litigation. (*Id.* ¶ 31.)

**Standard of Review on a Motion to Dismiss**

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C.

-4-

1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

The duty of fair notice under Rule 8(a), however, requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court has instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotations omitted). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (clarifying *Twombly*). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations omitted). Rather, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. When considering whether a complaint states a plausible claim and can survive a Rule 12(b)(6) motion, a court "'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)

-5-

Case 1:09-cv-00479-JAB -WWD   Document 15   Filed 04/28/10   Page 5 of 14

(quoting *Iqbal*, 129 S. Ct. at 1950). With these principles in mind, the court now turns to the motion to dismiss.

**Discussion**

**I. Defendant's Motion to Dismiss Plaintiff's Claim for Breach of Contract As a Third-Party Beneficiary**

In support of its breach of contract claim against Defendant, Plaintiff alleges that it is an intended third-party beneficiary of the $900,000 payment that Defendant was obligated to pay to M&G in the December 14, 2007, co-counseling agreement between Defendant and M&G. Defendant contends that Plaintiff has not sufficiently shown its status as an intended third-party beneficiary and the claim should, therefore, be dismissed. For the following reasons, I agree with Defendant that dismissal of Plaintiff's breach of contract claim is proper.

To state a claim for breach of contract as a third-party beneficiary under North Carolina law, "the allegations in the complaint must be sufficient to allow the court to draw a reasonable inference that the plaintiff was intended to be a third party beneficiary at the time the contract was made."[2] *In re Shearin Family Invs., LLC*,

---

[2] Neither party has addressed the choice of law issues raised in this diversity of citizenship case, and both parties merely assume that North Carolina substantive law applies to all three claims. North Carolina's choice of law rules are well established, and the court need not delve extensively into them here. Suffice it to say, Defendant is a North Carolina corporation with its principal place of business in North Carolina, and Plaintiff is a Delaware LLC with its principal place of business in Florida. It appears reasonable, then, to assume that the alleged tortious conduct by Defendant occurred in North Carolina such that North Carolina law would apply to the tortious interference and unfair and deceptive trade practices claims. Moreover, it appears that the contract that is the subject of the

418 B.R. 870, 876 (Bankr. E.D.N.C. 2009). Accordingly, to establish a claim based on the third-party beneficiary doctrine, a plaintiff must allege: "'(1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for [the plaintiff's] *direct,* and not incidental, benefit.'" *Hospira Inc. v. Alphagary Corp.*, – N.C. App. –, –, 671 S.E.2d 7, 13 (2009) (emphasis in original) (quoting *Leasing Corp. v. Miller*, 45 N.C. App. 400, 405-06, 263 S.E.2d 313, 317 (1980)).

Under the third prong, to survive a motion to dismiss, it is imperative that a plaintiff shows "that *both* contracting parties intended that a third party should receive a benefit that might be enforced in the courts. It is not enough that only one of the parties to the contract and the third party intended that the third party should be a beneficiary." *Blis Day Spa, LLC v. Hartford Ins. Group*, 427 F. Supp. 2d 621, 637 (W.D.N.C. 2006) (emphasis in original). In other words, it is not enough to allege that a defendant knew about a potential benefit to a third party. As the North Carolina Court of Appeals stated in *Hospira Inc.*, an allegation of a defendant's knowledge of a plaintiff's potential benefit alone, "without demonstration of [the plaintiff's] active and direct involvement, is insufficient to establish that [the plaintiff] was a third party beneficiary." 671 S.E.2d at 13 (internal quotations omitted).

---

breach of contract claim was entered into in North Carolina. In any event, I see no apparent conflicts of law with regard to the breach of contract claim. Thus, I will assume as the parties have that North Carolina law applies to the breach of contract, tortious interference, and unfair and deceptive trade practices claims.

Finally, because North Carolina law requires that contracts must be construed strictly against plaintiffs seeking enforcement as third-party beneficiaries, "the allegations in the complaint must be sufficient to overcome a presumption that the contracting parties did not intend to confer a legally enforceable benefit on the plaintiff." *In re Shearin Family Invs., LLC*, 418 B.R. at 877.

Here, Plaintiff has not stated a claim for breach of contract that is plausible on its face. Plaintiff has failed to plead factual content that would allow the court to draw the reasonable inference that the contract in question was entered into, by both parties, for Plaintiff's direct benefit. Rather, the complaint is comprised of mere "labels and conclusions" and "tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations omitted). Plaintiff alleges that a $900,000 payment that Defendant was obligated to pay to M&G under the co-counsel agreement between Defendant and M&G "was intended to reduce M&G's debt owed to Plaintiff . . . This fact was known to [Defendant] at the time." (Compl. ¶ 40.) Plaintiff's complaint goes on to allege, in conclusory fashion, that "Plaintiff is an intended third party beneficiary of the $900,000.00 payment." (*Id.* ¶ 41.) Plaintiff offers no factual enhancement, however, for the allegations concerning Defendant. Moreover, as Defendant notes, the plain language of the co-counseling agreement itself makes no mention of any debt owed from M&G to Plaintiff. At most, Plaintiff's allegations show that Defendant merely knew that Plaintiff stood to incidentally benefit from the co-counseling agreement. Plaintiff has, therefore, failed

-8-

to show that the contract was entered into, by both contracting parties, for his "direct, and not incidental benefit." *Hospira Inc.*, 671 S.E.2d at 13. As the Fourth Circuit recently observed, "where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief, as required by Rule 8." *Francis*, 588 F.3d at 193 (internal quotations omitted). Accordingly, Plaintiff's breach of contract claim has failed to state a plausible claim on which relief can be granted.

## II. Defendant's Motion to Dismiss Plaintiff's Claim for Tortious Interference with Contract

In support of the tortious interference with contract claim, Plaintiff alleges that Defendant interfered with the agreement between Capital Transaction Group and McEachin Law Firm, P.C., referred to as the "Fen-Phen" Agreement, and the M&G/Pogust co-counseling agreement before entering into Defendant's own co-counseling agreement with M&G. Defendant contends that Plaintiff has not stated a plausible claim for tortious interference with contract. I agree.

Under North Carolina law, to state a claim for tortious interference with contract that is plausible on its face, Plaintiff must allege and provide facts to show:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988).

-9-

Case 1:09-cv-00479-JAB -WWD   Document 15   Filed 04/28/10   Page 9 of 14

In order to demonstrate the element of acting without justification, a plaintiff's complaint must show "no motive for interference other than malice." *Filmar Racing Inc. v. Stewart*, 141 N.C. App. 668, 674, 541 S.E.2d 733, 738 (2001). Indeed, "a defendant may encourage the termination of a contract 'if he does so for a reason reasonably related to a legitimate business interest.'" *Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.*, 160 N.C. App. 520, 523, 586 S.E.2d 507, 510 (2003) (quoting *Robinson, Bradshaw & Hinson v. Smith*, 128 N.C. App. 305, 318, 498 S.E.2d 841, 850 (1998)). In other words, Plaintiff's complaint must plead factual content that would allow the court to draw the reasonable inference that Defendant "'acted with malice and for a reason not reasonably related to the protection of a legitimate business interest.'" *Cobra Capital, LLC v. RF Nitro Commc'ns, Inc.*, 266 F. Supp. 2d 432, 439 (M.D.N.C. 2003) (quoting *Smith v. Ford Motor Co.*, 289 N.C. 71, 94 S.E.2d 282, 296 (1976)).

Regarding Plaintiff's claim against Defendant for tortious interference with the M&G/Pogust agreement, Plaintiff has failed to sufficiently plead element one, a valid contract. That is, nowhere in the complaint does Plaintiff allege that it was a party to the M&G/Pogust agreement. As Plaintiff has not alleged that it was party to the M&G/Pogust Agreement, Plaintiff has failed to state a claim for tortious interference with contract related to the M&G/Pogust agreement.

Plaintiff has also failed to state a claim for tortious interference with contract regarding the Fen-Phen agreement between Plaintiff's assignor Capital Transaction

-10-

Group and McEachin Law Firm. Plaintiff's complaint states, *inter alia*, that Defendant's "actions were taken with fraud, malice, or oppression, or with a conscious disregard of the rights of Plaintiff." (Compl. ¶ 40.) Plaintiff, however, has merely alleged, but not shown, that Defendant acted without justification. This "formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. To state a claim for tortious interference with contract, Plaintiff must plead factual content that allows the court to draw the reasonable inference that Defendant acted with malice, rather than just alleging that Defendant's actions were undertaken with malice. Rather than pleading "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, Plaintiff's complaint "contains no factual allegations that would raise an inference of malice or an illegitimate business interest on the part of [defendant]," *Cobra Capital, LLC,* 266 F. Supp. 2d at 439. Plaintiff's bare allegations of malice, devoid of any factual enhancement, prevent Plaintiff from stating a plausible claim for tortious interference with contract related to the Fen-Phen agreement. Accordingly, as Plaintiff's claim fails to sufficiently plead malice or an illegitimate business interest on the part of Defendant, it should be dismissed.

### III. Defendant's Motion to Dismiss Plaintiff's Claim for Unfair and Deceptive Trade Practices

Finally, Plaintiff alleges that Defendant has violated the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. GEN. STAT. § 75-1.1 et seq., by

interfering with the M&G/Pogust co-counseling agreement and by committing tortious interference with regard to the M&G/Pogust and Fen-Phen Agreements. Defendant contends that Plaintiff has not stated a claim under which relief can be granted. I agree with Defendant that Plaintiff's claim under the UDTPA must be dismissed.

Pursuant to the UDTPA, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. GEN. STAT. § 75-1.1(a). To state a claim under the UDTPA, a plaintiff must make a clear showing of: (1) an unfair or deceptive act or practice; (2) in or affecting commerce; (3) which proximately caused actual injury to the plaintiff or his business. *See Wysong & Miles Co. v. Employers of Wausau*, 4 F. Supp. 2d 421, 433 (M.D.N.C. 1998); *Bassett Seamless Guttering, Inc. v. GutterGuard, LLC*, 501 F. Supp. 2d 738, 746 (M.D.N.C. 2007). Whether the defendant committed the alleged acts is a question for the jury; whether the facts proven constitute an unfair and deceptive trade practice is a question of law for the court. *United Labs., Inc.*, 322 N.C. at 664, 370 S.E.2d at 389.

Commerce, as regulated by the Act, "includes all business activities, however denominated, *but does not include professional services rendered by a member of a learned profession*." N.C. GEN. STAT. § 75-1.1(b) (emphasis added). In North Carolina, for the learned-profession exemption to apply, a two-prong test must be satisfied: "(1) the person or entity performing the alleged act must be a member of

-12-

a learned profession; and (2) the conduct in question must be a rendering of professional services." *Godfredson v. JBC Legal Group, P.C.*, 387 F. Supp. 2d 543, 548 (E.D.N.C. 2005). It is well settled in North Carolina that the practice of law has traditionally been considered a learned profession. *See Reid v. Ayers,* 138 N.C. App. 261, 266, 531 S.E.2d 231, 235 (2000). Indeed, "the exemption applies anytime an attorney or law firm is acting within the scope of the traditional attorney-client role." *Id.* at 267, 531 S.E.2d at 236*; see also Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 677, 355 S.E.2d. 838, 844 (1987) ("In view of the strong public policy favoring freedom of communication between parties and their attorneys with respect to anticipated or pending litigation, we conclude as a matter of law that the communication . . . concerning the subject matter of the controversy was neither unfair nor deceptive.").

Plaintiff's claim under the UDTPA must fail because Plaintiff has not made a proper showing that Defendant was engaged in commerce. That is, the underlying actions that Plaintiff alleges were unfair and deceptive arose from co-counseling agreements between Defendant and third parties. Jointly representing clients and entering into co-counseling agreements is within the scope of the traditional role of an attorney. Accordingly, Defendant's actions fall within the learned profession exception to the UDTPA, and the court should therefore dismiss Plaintiff's UDTPA claim.

**Conclusion**

For the reasons stated herein, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's claims (docket no. 8) for (1) breach of contract as an alleged third-party beneficiary, (2) tortious interference with contract, and (3) unfair and deceptive trade practices be **GRANTED** and that those claims be **DISMISSED**.

_____
WALLACE W. DIXON
United States Magistrate Judge

April 28, 2010