THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

No. 1:09-CV-479

| | |
|---|---|
| FEN-PHEN SERIES 2005-01, a series of CAP TRAN FUNDING, LLC, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) ) | **PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S MEMORANDUM OPINION AND RECOMENDATION** |
| JAMES S. FARRIN, P.C. ) ) | |
| Defendant. ) | |

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, Plaintiff Fen-Phen Series 2005-01, a series of Cap Tran Funding, LLC, ("Plaintiff") respectfully submits its objections to the Court's Memorandum Opinion and Recommendation entered on April 28, 2010, granting Defendant's motion to dismiss Plaintiff's claims. For the reasons set forth below, Plaintiff respectfully submits that this Court should reject the Memorandum Opinion and Recommendation and enter an order denying Defendant's motion to dismiss.

## NATURE OF THE MATTER

Plaintiff filed its complaint in this action on July 2, 2009 alleging three causes of action against Defendant: (1) breach of contract as an intended third party beneficiary; (2) tortious interference with contract; and (3) unfair and deceptive trade practices. After obtaining an extension of time to respond to the complaint, on August 17, 2009, Defendant filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Contemporaneous with the motion to dismiss, Defendant filed a brief in support of the motion to dismiss. On August 21, 2009, Plaintiff filed a

motion for extension of time to respond to Defendant's motion to dismiss. Plaintiff's motion for extension of time to respond was granted on August 24, 2009, and allowed Plaintiff until September 29, 2009 to respond to the motion to dismiss. On April 28, 2010, Magistrate Judge Wallace W. Dixon entered a Memorandum Opinion and Recommendation recommending that the Court grant Defendant's motion to dismiss. On May 13, 2010, Plaintiff filed a motion for extension of time to file written objections to the Memorandum Opinion and Recommendation. Plaintiff's motion for extension of time was granted on May 14, 2010, and allowed Plaintiff until June 1, 2010, to file its written objections.

## STATEMENT OF FACTS

The facts of this case are laid out in great detail in the text of the complaint and by incorporation of several attached agreements. Plaintiff's claims arise out of a tripartite relationship which includes Plaintiff[1], Defendant, and a Virginia lawyer named Donald McEachin ("McEachin"), and his various law firms. At all times relevant, Plaintiff has been a creditor of Donald McEachin's law firms. This debtor creditor relationship originally arose from Capital Transaction Group, Inc.'s ("CapTran") financing of McEachin Law Firm, P.C.'s ("McLaw") representation of claimants against Wyeth, Inc. related to the diet drugs Pondimin and Redux. (Compl. ¶ 7.) These drugs are commonly referred to as "Fen-Phen" and the related litigation was commonly referred to as "Fen-Phen Litigation." Pursuant to an agreement with McLaw, Plaintiff loaned McLaw $1,300,000.00 which was secured by a promissory note and security interest in McLaw's accounts receivable, including anticipated legal fees from the Fen-Phen Litigation. (Compl. ¶ 7.)

---

[1] Plaintiff Fen-Phen Series 2005-01, a series of Cap Tran Funding, LLC, is actually an assignee of Capital Transaction Group, Inc.'s rights and obligations under the Fen-Phen Agreement which is the subject of the complaint. (Compl. ¶ 35.) Throughout this document, both Fen-Phen Series 2005-01 and Capital Transaction Group, Inc. may be referred to as "Plaintiff."

{00013146.DOC}  2

In late 2005, it became apparent that McLaw would default on the payment obligations under the Fen-Phen Agreement and CapTran and McLaw began negotiations to give CapTran additional collateral for the amounts owed under the Fen-Phen Agreement. (Compl. ¶ 11.) McEachin raised the possibility of generating additional collateral from the expected legal fees from a new series of cases for late filers in the federal class action lawsuit, Pigford v. Glickman. (the "Pigford Litigation").[2] (Compl. ¶ 12.)

McLaw formed a partnership with attorney Donald Gee organized as McEachin and Gee Attorneys at Law, LLP, Virginia Limited Liability Partnership ("M&G") to represent a number of claimants whose claims were rejected because they were filed after the claims deadline for the Pigford Litigation. (Compl. ¶ 14.) McLaw pledged its interest in distributions from M&G as additional collateral to cure its default under the Fen-Phen Agreement. (Compl. ¶ 14.)

During this time, CapTran discussed with M&G the prospects of partnering with a larger law firm capable of handling a large claims volume in order to adequately process the large number of Pigford Litigation claimants being represented by M&G. (Compl. ¶ 15.) In 2006, enabling legislation was presented to the United States Congress for consideration which would allow late filers in the original Pigford Litigation to re-file their claims ("Pigford Litigation II"). (Compl. ¶ 16.)

In or around early 2007, CapTran introduced McEachin to James Farrin and Harris Pogust, two attorneys that expressed interest in partnering with M&G for the Pigford Litigation II claims. (Compl. ¶ 17.) On or about July 9, 2007, M&G and Defendant James S. Farrin, PC ("Farrin Law Firm") executed a letter of intent to serve as co-counsel for the Pigford Litigation II

---

[2] The Pigford Litigation is a class action civil rights case brought by black farmers who were denied loans and subsidies by the United States Department of Agriculture due to racial discrimination. The original claims process for the Pigford Litigation was established in 1998 and closed in October 11, 1999. However, 70,000 claims were rejected as incomplete or filed after the filing deadline.

claims. (Compl. ¶ 18.) At that time, Sidebar Capital, LLC ("Sidebar Capital"), an affiliate of CapTran, began to work on terms for a loan to finance the Pigford Litigation II claims. (Compl. ¶ 18.)

During the negotiations with Sidebar Capital, Defendant Farrin Law Firm was made aware of the Fen-Phen Agreement and CapTran's rights under the Fen-Phen Agreement, including the security agreement and the material adverse change clause contained therein. (Compl. ¶ 19.) Negotiations between Sidebar Capital and Farrin Law Firm failed, and as a result, M&G entered into an agreement with the law firm of Pogust & Braslow, LLC ("Pogust Law Firm") subject to certain contingencies, such as obtaining financing. (the "McEachin-Pogust Co-Counseling Agreement.") (Compl. ¶ 20.)

Sidebar Capital then began working on loan terms with Pogust Law Firm and M&G. (Compl. ¶ 21.) Sometime after the McEachin-Pogust Co-Counseling Agreement was signed, Farrin Law Firm discovered that McEachin Law Firm had entered into a co-counseling agreement with Pogust Law Firm. (Compl. ¶ 22.) After learning of the McEachin-Pogust Co-Counseling Agreement, Farrin Law Firm induced M&G to enter into a new co-counseling agreement with Farrin Law Firm, without CapTran's consent and in contravention of the McEachin-Pogust Co-Counseling Agreement. (Compl. ¶ 23.)

Upon learning that M&G intended to breach the McEachin-Pogust Co-Counseling Agreement by entering into a new agreement with Farrin Law Firm, Pogust Law Firm threatened to file suit against M&G for breach of contract. (Compl. ¶ 24.) Thereafter, M&G and Pogust Law Firm entered into a settlement agreement whereby Pogust was allowed to assume approximately 6,000 of the 40,000 Pigford Litigation II claims held by M&G, causing a

significant reduction in the collateral subject to the security agreement contained in the Fen-Phen Agreement. (Compl. ¶ 24.)

On or about December 14, 2007, Farrin Law Firm and M&G entered into a written co-counseling agreement. (the "McEachin-Farrin Co-Counseling Agreement.") (Compl. ¶ 25.) On or about May 11, 2008, the Pigford Claims Remedy Act passed the United States Congress as part of the 2008 Farm Bill and enabled the Pigford Litigation II claims to be resubmitted for consideration (the "Enabling Legislation.") (Compl. ¶ 26.)

Soon after the Enabling Legislation was passed, Farrin Law Firm was approached by the law firm of Chestnut, Sanders, Sanders, Pettaway & Campbell, LLC, the original Pigford Litigation class counsel, about co-counseling on their collective Pigford Litigation II claims. (Compl. ¶ 27.) On or about July 9, 2008, Farrin Law Firm and M&G entered into a Joint Representation Agreement Re Black Farmers Litigation. (the "Global Co-Counseling Agreement.") (Compl. ¶ 28.) Pursuant to the Global Co-Counseling Agreement, Farrin Law Firm agreed to reduced fees from the approximately 100,000 Pigford Litigation II claims that were being handled by M&G. (Global Co-Counseling Agreement ¶ IV). This agreement was executed without CapTran's consent. (Compl. ¶ 29.)

Under the terms of the McEachin-Farrin Co-Counseling Agreement, Farrin Law Firm was to make certain payments to M&G in order to reduce its debt to Plaintiff. (Compl. ¶ 30.) One such payment is contained in paragraph 11(b) of the McEachin-Farrin Co-Counseling Agreement and requires a $900,000 payment to M&G within 60 days of the passage of the Enabling Legislation. (Compl. ¶ 30.) Farrin Law Firm failed to make said payment to M&G within 60 days of the passage of the Enabling Legislation, and to date, Farrin Law Firm has failed and refused to make said payment. (Compl. ¶ 30.)

On or about August 11, 2008, M&G and Defendant Farmers Law Group of Connecticut, LLC ("Farmers Law Group") entered into a Co-Counseling Agreement whereby, among other things, Farmers Law Group agreed to undertake and indemnify M&G for all of its obligations and debts to Plaintiff in exchange for certain rights to a portion of the fees generated from Pigford Litigation II claims. (the "McEachin-Farmers Co-Counseling Agreement.") (Compl. ¶ 31.) On or about August 11, 2008, Plaintiff, Farmers Law Group, and M&G jointly entered into an agreement entitled Acceptance and Acknowledgement of Assignment and Assumption of Debt and Mutual Release. (the "Assumption and Release Agreement.") (Compl. ¶ 32.)

## QUESTIONS PRESENTED

A. Should the Court decline to adopt the Memorandum Opinion and Recommendation dismissing Plaintiff's claim for breach of contract as a third-party beneficiary?

B. Should the Court decline to adopt the Memorandum Opinion and Recommendation dismissing Plaintiff's claim for tortious interference with contract?

C. Should the Court decline to adopt the Memorandum Opinion and Recommendation dismissing Plaintiff's claim for unfair and deceptive trade practices?

## STANDARD OF REVIEW

The district court must determine de novo any part of the magistrate judge's disposition that has been properly objected to, and may accept, reject, or modify the Memorandum Opinion and Recommendation. Fed. R. Civ. P. 72(b)(3). In considering a motion to dismiss a complaint pursuant to Rule 12(b)(6), the court is to presume that the well pleaded allegations in the complaint are true, giving the plaintiff the benefit of all reasonable inferences. McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 327 (4th Cir. 1996). Although detailed facts are not required, the plaintiff is required to provide more than labels and conclusions, and a recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

**ARGUMENT**

I.  **The Memorandum Opinion and Recommendation should be rejected because Plaintiff's complaint adequately alleges a valid claim for breach of contract as a Third-Party Beneficiary?**

The Magistrate Judge's Opinion erroneously adopts Defendant's contention that Plaintiff failed to sufficiently show its status as an intended third-party beneficiary of the co-counseling agreement between Defendant and M&G. As the Court properly noted regarding stating a claim for breach of contract as a third-party beneficiary, "the allegations in the complaint must be sufficient to allow the court to draw a reasonable inference that the plaintiff was intended to be a third party beneficiary at the time the contract was made." In re Shearin Family Invs., LLC, 418 BR 870, 876 (Bankr. E.D.N.C. 2009). To survive Defendant's motion to dismiss pursuant to Rule 12(b)(6), the complaint must allege: "(1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for [the plaintiff's] **direct**, and not incidental, benefit." Hospira Inc. v. Alphagary Corp., 194 N.C. App. 695, 702, 671 S.E.2d 7, 14 (2009) (emphasis in original) (quoting Leasing Corp. v. Miller, 45 N.C. App. 400, 405-06, 263 S.E.2d 313, 317 (1980)).

The Magistrate Judge's Opinion finds that the complaint fails to adequately allege facts to meet the third element required by Hospira, that the McEachin-Farrin Co-Counseling Agreement was entered into for Plaintiff's direct, and not incidental, benefit. In this regard, the Magistrate's opinion ignores the direct and specific allegations of the Complaint. Paragraph 30 of the Complaint specifically states that under the terms of the McEachin-Farrin Co-Counseling Agreement, Defendant "was to make certain payments to M&G in order to reduce its debt to Plaintiff." (Compl. ¶ 30.) One such payment was a $900,000.00 payment due from Defendant to M&G within 60 days of the passage of the Enabling Legislation. (Compl. ¶ 30.)

The Complaint goes on to specifically state that the "$900,000.00 payment to M&G was intended to reduce M&G's debt owed to Plaintiff." (Compl. ¶ 40.) As a result, Plaintiff has not simply made allegations of labels and conclusions to recite the elements of a cause of action for breach of contract as an intended third party beneficiary.

Plaintiff does not dispute that in order to prevail on its claim as an intended third party beneficiary of the McEachin-Farrin Co-Counseling Agreement, both M&G and Defendant must have "intended that [Plaintiff] should receive a benefit that might be enforced in the courts." Blis Day Spa, LLC, v. Hartford Ins. Group, 427 F. Supp. 2d 621, 637 (W.D.N.C. 2006). Plaintiff also concedes that it would not be enough to simply allege that Defendant knew about a potential benefit to Plaintiff. See Blis Day Spa, LLC v. Hartford Ins. Group, 427 F.Supp.2d 621, 637 (W.D.N.C. 2006). Again, the Magistrate Judge's Opinion ignores the direct and specific allegations of the complaint. It is not merely alleged that Defendant knew about a potential benefit to Plaintiff. It is specifically alleged that the purpose of the $900,000.00 payment was to reduce M&G's debt to Plaintiff. This is not a "potential" benefit to Plaintiff, but rather it is the only reasonable inference that arises from the allegations of the complaint.

The Magistrate Judge's Opinion also relies upon Defendant's argument that the co-counseling agreement itself makes no mention of any debt owed from M&G to Plaintiff. Plaintiff concedes that the McEachin-Farrin Co-Counseling agreement does not mention Plaintiff or the debt owed by M&G to Plaintiff. However, this fact is not determinative of whether Plaintiff was an intended third party beneficiary of the co-counseling agreement. In fact, the North Carolina Supreme Court has stated that "the entire record, not any single factor" is dispositive as to the parties' intention. Id. citing Raritan River Steel Co. v. Cherry, Bekaert & Holland, 329 N.C. 646, 654, 407 S.E.2d 178 (1991).

Examining the entire record at this stage of the litigation, the only reasonable conclusion that can be reached is that Plaintiff was intended by both M&G and Defendant to be a direct intended third party beneficiary of the $900,000.00 payment from Defendant to M&G under the co-counseling agreement. M&G was indebted to Plaintiff and Plaintiff held a security interest in M&G's accounts and rights to payment. (Compl. ¶ 7 and Exhibit A Section 2.) CapTran introduced McEachin to James Farrin for the purpose of co-counseling with M&G to handle the Pigford Litigation II. (Compl. ¶ 17.) Farrin Law Firm was made aware of the Fen-Phen Agreement and CapTran's security interest in M&G's accounts and rights to payment. (Compl. ¶ 19.) Defendant and M&G entered into a written co-counseling agreement. (Compl. ¶ 25.) Under the terms of the written co-counseling agreement, Defendant was required to make payments to M&G in order to reduce its debt to Plaintiff. (Compl. ¶ 30.) The $900,000.00 payment required under paragraph 11(b) of the written co-counseling agreement was intended to reduce M&G's debt to Plaintiff. (Compl. ¶ 40.) It is clear from these specific allegations set forth in the complaint that upon examining the entire record presently before the Court, Plaintiff has sufficiently set forth facts alleging that it was an intended third party beneficiary of the McEachin-Farrin Co-Counseling Agreement.

Finally, Plaintiff would like to point out that North Carolina has expressly adopted the American Law Institute's Restatement of Contracts' position on the rights of third party beneficiaries of contracts which allows an intended third party beneficiary to enforce the rights of a contract to which it was not a party. <u>Vogel v. Reed Supply Company</u>, 277 NC 119, 127, 177 S.E.2d 273, 278 (1970). Under the Restatement's analysis, third party beneficiaries are divided into three groups: (1) donee beneficiaries; (2) creditor beneficiaries; and (3) incidental beneficiaries. <u>Id.</u> at 127, 177 S.E.2d at 279. The Court in <u>Vogel</u> went on to adopt the

Restatement's position that both donee beneficiaries and creditor beneficiaries can enforce third party contracts to their benefit, while incidental beneficiaries do not acquire rights to enforce a contract against the promisor or the promisee. Id.

A donee beneficiary arises where "it appears that the 'purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary.'" Id. A creditor beneficiary is where "'no purpose to make a gift appears' and 'performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary.'" Id. Incidental beneficiaries arise "where the facts do not appear to support inclusion in either of the above categories." Id. In granting Defendant's motion to dismiss, the Magistrate's Judge's Opinion impliedly finds that Plaintiff was an incidental third party beneficiary of the McEachin-Farrin Co-Counseling Agreement. This is clearly not supported by the allegations of the complaint and any reasonable inferences drawn from those allegations.

II. **The Memorandum Opinion and Recommendation should be rejected because Plaintiff's complaint adequately alleges a valid claim for tortious interference with contract?**

The complaint alleges that Defendant tortiously interfered with both the Fen-Phen Agreement and the McEachin-Pogust Co-Counseling Agreement. As noted by the Magistrate Judge's Opinion, to state a claim for tortious interference with contract, the plaintiff must allege the following five elements:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

United Labs., Inc. v. Kuykendall, 332 N.C. 643, 661 370 S.E.2d 375, 387 (1988).

The Magistrate Judge's Opinion found that Plaintiff had failed to show that Plaintiff was a party to the McEachin-Pogust Co-Counseling Agreement and thus failed to meet the first element for a cause of action for tortious interference with contract. Plaintiff concedes that it was not a party to the McEachin-Pogust Co-Counseling Agreement. However, Plaintiff has alleged that it was an intended third-party beneficiary under the McEachin-Pogust Co-Counseling Agreement. Under that agreement, Pogust was to advance money to M&G to reduce M&G's debt to Plaintiff under the Fen-Phen Agreement. (Compl. Ex. B, McEachin-Pogust Co-Counseling Agreement ¶ 14.) As a result, Plaintiff was an intended third party beneficiary under the McEachin-Pogust Co-Counseling Agreement because the advances were intended to reduce M&G's debt to Plaintiff. As reasoned in the previous section above, Plaintiff was a creditor beneficiary under the McEachin-Pogust Co-Counseling Agreement and as a result, Plaintiff is entitled to enforce the terms of the McEachin-Pogust Co-Counseling Agreement.

The Magistrate Judge's Opinion also erroneously adopts Defendant's contention that Plaintiff failed to sufficiently allege facts to show that Defendant acted without justification in inducing M&G to breach both the Fen-Phen Agreement and the McEachin-Pogust Co-Counseling Agreement. The Magistrate Judge's Opinion ignores the allegations contained in the complaint regarding Defendant's tortious interference with Plaintiff's contractual rights. Defendant Farrin Law Firm knew of the Fen-Phen Agreement and the McEachin-Pogust Co-Counseling Agreement at the time it induced M&G to breach the McEachin-Pogust Co-Counseling Agreement and at the time it induced M&G to enter into the McEachin-Farrin Co-Counseling Agreement. (Compl. ¶ 44.) Despite knowing of the Fen-Phen Agreement and McEachin-Pogust Co-Counseling Agreement, Farrin Law Firm induced M&G to breach its agreements. (Compl. ¶ 45.) Farrin Law Firm has either induced M&G and Farmers Law Group

to breach the Fen-Phen Agreement by not allowing them to fulfill their reporting requirements to Plaintiff, or Farrin Law Firm or has refused to allow M&G and Farmers Law Group to perform these obligations. (Compl. ¶ 46.) Furthermore, Farrin Law Firm induced M&G to enter into the Global Co-Counseling Agreement, thereby reducing the value of Plaintiff's security interest secured by the Fen-Phen Agreement. (Compl. ¶ 48.) Farrin Law Firm's actions were undertaken malice or with a conscious disregard of the rights of Plaintiff. (Compl. ¶ 50.) What the complaint is lacking is any allegation that would lead to a reasonable inference that Defendant's actions were done so with a legitimate business purpose.

  This is not a situation where Plaintiff and Defendant are in competition and thus Defendant is seeking to further its own business interests by its actions. In the present case, it is alleged that Defendant has either induced M&G and Farmer's Law Group to breach their reporting obligations to Plaintiff or Defendant has refused to allow them to perform their reporting obligations. (Compl. ¶ 46.) How can it be said that the allegations of the complaint lead to a reasonable inference that Defendant has done so in furtherance of a legitimate business interest? Furthermore, Defendant induced M&G to enter into the Global Co-Counseling Agreement which in turn reduced the value of Plaintiff's security interest secured by the Fen-Phen Agreement. (Compl. ¶ 48.) Again, how can it be said that this was done in furtherance of Defendant's legitimate business interest? Finally, upon learning that M&G had entered into the McEachin-Pogust Co-Counseling Agreement, Defendant induced M&G to breach that agreement by entering into the McEachin-Farrin Co-Counseling Agreement. (Compl. ¶ 23.) Once again, Defendant acted in complete disregard to Plaintiff's contractual rights with M&G. Defendant's attempt to shroud its actions under the guise of furthering its legitimate business interest is a sham. No other motive than one of malice can be derived from the allegations of the complaint.

As a result, the Magistrate's Opinion should be rejected and Defendant's motion to dismiss should be denied.

III. **The Memorandum Opinion and Recommendation should be rejected because Plaintiff's complaint adequately alleges a valid claim for unfair and deceptive trade practices.**

The elements of a claim for unfair and deceptive trade practices are: (1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or his business. Wysong & Miles Co. v. Employers of Wausau, 4 F.Supp.2d 421 (M.D.N.C. 1998). The Magistrate's Opinion erroneously holds that Plaintiff's claim for unfair and deceptive trade practices fails because it is not "in or affecting commerce" due to the learned profession exemption in N.C. Gen. Stat. § 75-1.1(b). N.C. Gen. Stat. § 75-1.1(b) defines commerce as "all business activities, however denominated, but does not include professional services rendered by a member of a learned profession."

In determining whether the learned profession exemption applies, a two part test must be satisfied. Reid v. Ayers, 138 N.C. App. 261, 266, 531 S.E.2d 231, 235 (2000). "First, the person or entity performing the alleged act must be a member of a learned profession. Second, the conduct in question must be a rendering of professional services." Id. (internal citations omitted.) Plaintiff concedes that the first prong of the test is satisfied in that Defendant is a law firm. However, the second prong of the test is not applicable in the present case because the actions alleged to have been committed by Defendant were not performed in the "rendering of professional services." In Reid, the North Carolina Court of Appeals stated that "not all services performed by attorneys fall within the exception." Id. at 267. For example, neither advertising nor attorney price-fixing falls within the exception. Id. The exemption only applies when an

attorney or law firm is acting within the scope of the traditional attorney-client role.  Id.  It does not apply "when the attorney or law firm is engaged in the entrepreneurial aspects of legal practice that are geared more towards their own interest, as opposed to the interests of their clients."  Id.

It is clear from the allegations of the complaint that Defendant's alleged actions were "entrepreneurial" and not the "rendering of professional services" as they were geared more towards its own interests, as opposed to the interests of its clients.  Defendant's actions were more akin to advertising than to rendering legal services, and based upon the analysis in Reid, the learned profession exemption is inapplicable.  Thus the Magistrate's Opinion should be rejected and the Court should deny Defendant's motion to dismiss Plaintiff's claim for unfair and deceptive trade practices.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to reject the Memorandum Opinion and Recommendation and enter an order denying Defendant's motion to dismiss.

This the 1st day of June, 2010.

                                            SHIRLEY & ADAMS, PLLC

                                            BY:  /s/ Ryan J. Adams_____
                                            Ryan J. Adams
                                            N.C. State Bar No. 27687
                                            150 Fayetteville Street, Suite 520
                                            Raleigh, NC 27601
                                            Tel: 919-899-6278
                                            Fax: 919-899-6279
                                            Email: ryanadams@shirley-adams.com

## CERTIFICATE OF SERVICE

I, Ryan J. Adams, do hereby certify that the foregoing Plaintiff's Objections to the Magistrate Judge's Memorandum Opinion and Recommendation was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record for defendants: *James L. Gale, T. Matthew Creech, and Matthew N. Leerberg, Smith Moore Leatherwood, LLP, 2800 Two Hanover Square, Raleigh, NC 27601.*

This the 1st day of June, 2010.

SHIRLEY & ADAMS, PLLC

BY: /s/ Ryan J. Adams
Ryan J. Adams
N.C. State Bar No. 27687
150 Fayetteville Street, Suite 520
Raleigh, NC 27601
Tel: 919-899-6278
Fax: 919-899-6279
Email: ryanadams@shirley-adams.com