IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:09-CV-479

|  |  |  |
|---|---|---|
| FEN-PHEN SERIES 2005-01, a series of<br>CAP TRAN FUNDING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JAMES S. FARRIN, P.C.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **DEFENDANT'S RESPONSE TO<br>PLAINTIFF'S OBJECTIONS TO<br>RECOMMENDATION** |

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, Defendant James

S. Farrin, P.C. hereby responds to Plaintiff Fen-Phen Series 2005-01, a series of Cap Tran

Funding, LLC's objections to the Magistrate Judge's recommendation that its Complaint

be dismissed for failure to state a claim upon which relief can be granted.

## <u>NATURE OF THE MATTER</u>

In this lawsuit, Plaintiff attempts to recoup losses it incurred as a litigation

financier-creditor for a third-party law firm in connection with litigation in which

Defendant was not involved. Plaintiff does this by claiming a financial interest in a

separate contract between Defendant and that same third-party law firm that arose later in

unrelated litigation. Plaintiff was neither a party to nor an intended beneficiary of that

separate contract between Defendant and the third-party firm. Yet Plaintiff seeks to

recover an advance allegedly owed by Defendant to the third-party law firm in order to

reduce the third-party law firm's debt to Plaintiff arising from their unrelated litigation-

financing relationship. Plaintiff does so even though it has released the third-party law firm from that debt.

The matter is now before the Court on Plaintiff's objections to the Magistrate Judge's recommended dismissal of each cause of action raised in the Complaint, which include Plaintiff's claims for breach of contract, tortious interference with contract, and unfair and deceptive trade practices. For the reasons set forth below, the Memorandum Opinion and Recommendation should be adopted in full.

## STATEMENT OF FACTS

The facts, as alleged by Plaintiff in the Complaint and evident from the face of the various contracts attached thereto as exhibits, are as follows.[1] To summarize, the transactions on which the Complaint is based relate to two separate and unrelated groups of litigation. A Virginia lawyer, Donald McEachin, or his various law firms, had contingency contracts related to both sets of litigation. The first litigation involved a series of products-liability cases involving a drug commonly called Fen-Phen. One of Plaintiff's affiliates provided financing to McEachin for that litigation and then assigned its rights to Plaintiff. Defendant had no involvement with Plaintiff, McEachin, or any other entity referenced herein in the Fen-Phen litigation. The second litigation is a series of cases asserting discrimination by the United States Department of Agriculture,

---

[1] In evaluating a motion to dismiss, a court may consider "exhibits attached to the complaint" without converting the motion to dismiss to a motion for summary judgment. See Norfolk Fed'n of Bus. Dists. v. City of Norfolk, No. 96-1746, 1996 WL 671293, at *1 (4th Cir. Nov. 20, 1996).

commonly called the Pigford Litigation. Defendant and one of McEachin's firms have entered into two co-counseling agreements involving Pigford claims. Although Plaintiff has no contract with Defendant, Plaintiff asserts it has an interest in the first co-counseling contract between Defendant and the McEachin firm. After Defendant entered the second co-counseling agreement, Plaintiff entered into contracts with an unrelated entity in a multi-part agreement, one part of which included the unrelated entity's agreement to assume the debt of McEachin and his firms in exchange for the ultimate fees that McEachin and his firms may earn under any co-counseling contract with Defendant. As a part of those transactions, Plaintiff released McEachin, his firms, and his guarantors from their debt obligations. Nevertheless, Plaintiff seeks to recover monies allegedly owed by Defendant to the McEachin firm. A more detailed explanation of the complex set of agreements implicated in this case follows.[2]

Plaintiff is the assignee of a January 2005 litigation-financing agreement (the "Fen-Phen Agreement") with the McEachin Law Firm (the "McEachin Firm") to pursue pharmaceutical-products-liability claims. (Doc. No. 1, Compl. ¶¶ 6, 35, Ex. A.) The assignor, Capital Transaction Group ("CTG"), loaned the McEachin Firm $1,300,000, while securing a personal guaranty from Donald McEachin as well as a promissory note and a first-priority security interest. (Id., Ex. A ¶¶ 1-2 and at 17, 22-24.)

Plaintiff alleges that it became apparent in late 2005 that the McEachin Firm would default on its payment obligations. (Id. ¶ 11.) Plaintiff then sought to obtain

---

[2] To facilitate review, a timeline and synopsis of the agreements involved in this case is attached hereto as Exhibit A.

additional collateral. (Id.) At that time, the McEachin Firm had separately secured representation of a large number of farmers whose claims had been rejected as untimely in the federal class-action lawsuit of Pigford v. Glickman ("Pigford I"). (Id. ¶ 12.) By late 2005, proposed legislation was being considered that would allow such late claims in a subsequent class action lawsuit ("Pigford II"). (Id. ¶ 14.) The McEachin Firm had formed a partnership with a Virginia law firm called McEachin and Gee, Attorneys at Law, LLP ("M&G") to represent Pigford II claimants. (Id.) The McEachin Firm also pledged its fee interests in this litigation as additional collateral "to cure its default under" the Fen-Phen Agreement. (Id.)

The Complaint alleges that in early 2007 CTG introduced Donald McEachin to James Farrin, head of Defendant law firm, as well as to Harris Pogust, who has a separate law firm, in order for them to explore a potential co-counsel relationship with M&G to pursue Pigford II claims. (Id. ¶ 17.) Plaintiff hoped an agreement between McEachin and this firm would enhance its collateral for the Fen-Phen Agreement and that Plaintiff would further secure a contract to provide financing for the Pigford II litgation. The Complaint alleges that on July 9, 2007, M&G and Defendant James S. Farrin, P.C. (the "Farrin Firm") executed a letter of intent to serve as co-counsel for Pigford II claims. (Id. ¶ 18.) Although Plaintiff does not attach the letter of intent to its Complaint, other allegations of the Complaint make clear that the letter of intent was contingent on financing from Plaintiff's affiliate—Sidebar Capital, LLC. (See id.) However, negotiations for that financing failed; M&G and the Farrin Firm never executed a

4

contract based on the letter of intent. (Id. ¶ 20)  Plaintiff alleges that the Farrin Firm learned of the Fen-Phen Agreement during these negotiations. (Id. ¶ 19.)

On October 16, 2007, M&G entered into a Pigford Litigation II Co-Counseling Agreement with the "Pogust Firm" (the "Pogust Co-Counseling Agreement").  (Id. ¶ 20, Ex. B.)  This agreement also was conditioned on the completion of a financing transaction between Sidebar Capital and the Pogust Firm.  (Id. ¶ 20, Ex. B ¶¶ 2(b)-(c).) Plaintiff alleges, upon information and belief but without further detail, that the Farrin Firm induced M&G to breach the Pogust Co-Counseling Agreement.  (Id. ¶ 23.)  On December 7, 2007 M&G and the Pogust Firm agreed to terminate their agreement, with the Pogust Firm assuming representation of approximately 6,000 of the Pigford II claimants that had been signed by M&G.  (Id. ¶ 24.)[3]

On December 14, 2007, M&G and the Farrin Firm entered into a Pigford Litigation Co-Counseling Agreement (the "Farrin Co-Counseling Agreement") for the purpose of jointly prosecuting Pigford II actions.  (Id. ¶ 25, Ex. C ¶ 1.)  The agreement established a fee-sharing formula, awarding a 19.5% interest to M&G of any net fees with the remainder payable to the Farrin Firm.  (Id., Ex. C ¶ 11.)  The Farrin Firm agreed to advance M&G a total of $2,000,000 against any recovery under the agreement: $1,100,000 was advanced upon execution of the agreement; and $900,000 was conditioned upon, and was not to be paid until sixty days after, final passage of Pigford II

---

[3] As referenced in other agreements attached to the Complaint, M&G incurred a further obligation to pay Plaintiff $300,000 which appears to have been a finder's fee for having introduced the two parties.

enabling legislation. (Id. ¶ 30, Ex. C ¶ 11.) Plaintiff was not a party to and provided no financing in connection with the Farrin Co-Counseling Agreement. (Id., Ex. C.) The agreement did not assign any payments to Plaintiff to reduce M&G's debt or otherwise address M&G's separate Fen-Phen Agreement with Plaintiff. (Id.)

The Pigford II enabling legislation was passed by Congress and signed into law over six months later on June 18, 2008. (See Doc. No. 9, Mot. to Dismiss Br. at 6 n.5.) Without an intervening change, the $900,000 advance under the Farrin Co-Counseling Agreement might have become due on August 17, 2008, sixty days after the legislation was ultimately passed by Congress. (Doc. No. 1, Compl. ¶ 30, Ex. C ¶ 11.) But two significant events occurred before August 17. First, on July 9, 2008, the Farrin Firm, M&G, the Pogust Firm, and others entered into a new co-counseling arrangement that increased the number of cases in which M&G might share. Under this "Global Co-Counseling Agreement," the various firms pooled their Pigford II cases. (Id. ¶ 28, Ex. D.) As is made clear by a subsequent transaction, Plaintiff was aware of the Global Co-Counseling Agreement and moved to take advantage of it in its dealings with McEachin and his firms.

Second, on August 11, 2008, Plaintiff, the McEachin Firm, Donald McEachin, and M&G (the "McEachin Parties"), Plaintiff, and an organization called the Farmers' Law Group of Connecticut, LLC ("FLG") entered into two related agreements, as a result of which Plaintiff released the McEachin Parties from any debt to Plaintiff and transferred payment obligations for the Fen-Phen debt to FLG. (Id. ¶¶ 31-32, Exs. E-F.) The

agreements describe the fees that M&G may be owed pursuant to the Pigford II co-counseling agreements, transfer M&G's rights in those fees to FLG, and then require that FLG pay the first receipts from those fees to Plaintiff to satisfy the Fen-Phen debt. (Id.) The first of the two agreements, the "FLG Co-Counseling Agreement," described the percentage sharing provisions of the Farrin Co-Counseling Agreement and allocated those fees but did not reference any advance owed to M&G by the Farrin Firm. (Id. ¶ 31, Ex. E.)

The second August 11 agreement, titled "Acceptance and Acknowledgement of Assignment of Debt and Mutual Release" (the "Assumption and Release Agreement"), has provisions under which, among other things, Plaintiff agreed to allow, and FLG agreed to undertake, all debts and obligations of the McEachin Firm and Donald McEachin under the Fen-Phen Agreement. (Id. ¶ 32, Ex. F ¶ 1.) Plaintiff specifically discharged the McEachin Parties "from any and all actions, causes of action, claims, demands, damages, costs, expenses, fees, interest and compensation," including the Fen-Phen Agreement and debt arising thereunder. (Id., Ex. F ¶ 2.) The Assumption and Release Agreement expressly "replaces, cancels and supersedes any and all other prior agreements, understandings or undertakings of the parties." (Id., Ex. F ¶ 9.) This agreement also makes no mention of any advance owed to M&G by the Farrin Firm. As a result, as of August 11, 2008—nearly one week prior to August 17, when sixty days had passed since the Pigford legislation passed Congress and became law—M&G owed Plaintiff nothing.

7

## QUESTION PRESENTED

Should the Magistrate Judge's recommended dismissal of Plaintiff's claims be adopted where the Complaint, along with the attached exhibits, show: (1) that Plaintiff was not an intended third-party beneficiary of the Farrin Co-Counseling Agreement; (2) that Defendant pursued only its own legitimate business interests; and (3) that Defendant's actions were undertaken in connection with the rendering of professional legal services?

## STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint.

Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (citation omitted).

Although a plaintiff's well-pleaded allegations are to be taken as true at this stage of litigation, the Court should not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inference, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level"; therefore, a complaint will survive a Rule 12(b)(6) motion to dismiss only if it sets forth "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570, 127 S. Ct. at 1965, 1974 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (citation omitted).[4]

## **ARGUMENT**

Although the Complaint attempts to weave facts from a complicated series of agreements and negotiations in search of some legitimate cause of action, at bottom, the fundamental defects of Plaintiff's claims are evident. All of its claims fail because the wide net it has cast to leverage other arrangements to cover the Fen-Phen debts owed to it by the McEachin Parties simply cannot reach as far as Defendant's co-counseling arrangement with M&G in the Pigford II Litigation. Defendant never entered into an agreement either directly with or intended to benefit Plaintiff; it acted at all times for legitimate business purposes and for the benefit of and in the best interests of its clients; and all of Defendant's acts were undertaken as a part of the learned profession of the practice of law. Defendant responds to Plaintiff's objections to the Memorandum Opinion and Recommendation as follows—and refers to and incorporates by reference its previous briefs in support of its Motion to Dismiss. (<u>See</u> Doc No. 9, Mot. to Dismiss Br.; Doc. No. 13, Mot. to Dismiss Reply.)

---

[4] As recently clarified by the Fourth Circuit, the "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009) (quoting <u>Iqbal</u>, --- U.S. at ---, 129 S. Ct. at 1949). It requires the plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling relief (i.e., the "plausibility of entitlement to relief.") <u>Id.</u> at 193 (quoting and citing <u>Twombly</u> and <u>Iqbal</u> (internal quotations omitted)). "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557, 127 S. Ct. at 1966).

## A. Plaintiff Is Not An Intended Third-Party Beneficiary To The Farrin Co-Counseling Agreement.

Plaintiff claims to be an intended third-party beneficiary of the Farrin Co-Counseling Agreement. Specifically, Plaintiff alleges that the $900,000 advance payment contemplated under paragraph 11(b) of that agreement was intended to reduce M&G's debt owed to Plaintiff stemming from the Fen-Phen Agreement. (See Doc. No. 1, Compl. ¶¶ 30, 40.) Despite Plaintiff's conclusory allegations to the contrary, the facts as alleged in the Complaint and clear from the face of the Farrin Co-Counseling Agreement prove that Plaintiff was at best a potential incidental beneficiary to Defendant and M&G's contractual relationship—thereby warranting dismissal of this claim.

To state a claim based on the third-party-beneficiary contract doctrine, Plaintiff must allege sufficient facts to show: "(1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for his direct, and not incidental, benefit." Hospira Inc. v. Alphagary Corp., 194 N.C. App. 695, 702, 671 S.E.2d 7, 13 (2009) (internal quotations omitted). In determining whether the parties intended to benefit a third party, the Court must consider the language of the contract as well as the circumstances surrounding the agreement. Id. Further, "the court must construe the contract strictly against the third party seeking to enforce the contract." The Cincinnati Ins. Co. v. Centech Bldg. Corp., 286 F. Supp. 2d 669, 681 (M.D.N.C. 2003) (citation omitted).

Plaintiff is unable to establish the third element of its claim as a matter of law—that is, that the agreement was entered into for its "direct, and not incidental, benefit." A

10

third party is a direct beneficiary of a contract only if the contracting parties intended to confer a legally enforceable benefit on that third party. <u>Hospira Inc.</u>, 194 N.C. App. at 703, 671 S.E.2d at 13 (citation omitted).[5] "The most significant factor as to the rights of a third-party beneficiary is that *both* contracting parties intended that a third party should receive a benefit that might be enforced by the courts." <u>Blis Day Spa, LLC v. The Hartford Ins. Group</u>, 427 F. Supp. 2d 621, 637 (W.D.N.C. 2006) (emphasis in original). "It is not enough that only one of the parties to the contract and the third party intended that the third party should be a beneficiary." <u>Id.</u> Moreover, "[i]t is not enough that the contract, in fact, benefits the [third party], if, when the contract was made, the contracting parties did not intend it to benefit the [third party] directly." <u>Hospira Inc.</u>, 194 N.C. App. at 703, 671 S.E.2d at 13 (citation omitted).

Against this backdrop, the Magistrate Judge recommended dismissal of Plaintiff's third-party-beneficiary claim, concluding that "[a]t most, Plaintiff's allegations show that Defendant merely knew that Plaintiff stood to incidentally benefit from the co-counseling agreement." (Doc. No. 15, Mem. Op. & Recommendation at 8-9.) Plaintiff objects to this recommendation, reiterating its bare allegations that Defendant knew of M&G's debt to Plaintiff that Defendant intended its payments to M&G to help M&G reduce that debt. Plaintiff's objection continues to miss the mark. In light of the language of the Farrin

---

[5]   North Carolina has adopted the Restatement (Second) of Contracts section regarding third-party beneficiaries. Although Plaintiff discusses "donee" and "creditor" beneficiaries, "[t]he Restatement has since been updated, and now recognizes only 'intended and incidental' beneficiaries." <u>Hoisington v. ZT – Winston-Salem Assocs.</u>, 133 N.C. App. 485, 491, 516 S.E.2d 176, 181 (1999).

Co-Counseling Agreement and the circumstances surrounding that agreement, there are simply no facts to support a third-party beneficiary claim that is plausible on its face—despite Plaintiff's conclusory allegations to the contrary.

First, the unambiguous language of the Farrin Co-Counseling Agreement demonstrates that the parties did not intend to confer a legally enforceable benefit on Plaintiff. As Plaintiff concedes, the Agreement neither designates Plaintiff as a beneficiary nor even mentions the Fen-Phen debt. See Babb v. Bynum & Murphrey, PLLC, 182 N.C. App. 750, 754, 643 S.E.2d 55, 58 (2007) (holding that the plaintiff was not a third-party beneficiary in part because he was not designated as such in the agreement). Plaintiff's allegations to the contrary in its Complaint—that Defendant was required "under the terms" of the co-counseling agreement to make payments to M&G in order to reduce M&G's debt to Plaintiff—must be disregarded as inconsistent with the actual text of the co-counseling agreement. See Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . the exhibit prevails."). Furthermore, the merger clause in the Farrin Co-Counseling Agreement precludes any argument that the parties contemplated, beyond the four corners of the document, a role or benefit for Plaintiff in the contract.

The circumstances surrounding the Farrin Co-Counseling agreement confirm that Plaintiff was not an intended third-party beneficiary of that agreement. Plaintiff acknowledges that M&G and Defendant must both have intended the Farrin Co-

Counseling Agreement to confer a legally enforceable benefit on Plaintiff. Plaintiff also admits that Defendant's mere knowledge of a potential benefit resulting from the co-counseling agreement is insufficient to confer third-party-beneficiary status on Plaintiff. Yet, despite these concessions, Plaintiff asks the Court to make the unreasonable inference that it was an intended third-party beneficiary based solely on the allegations that CTG introduced Donald McEachin to James Farrin for the purpose of co-counseling Pigford II claims and that Defendant was made aware of the Fen-Phen Agreement and CTG's financial interest in that unrelated agreement.

Plaintiff's bare allegations simply do not support the inference that it was an intended third-party beneficiary. Plaintiff admits that Defendant's initial co-counseling negotiations with M&G—which directly involved an affiliate of Plaintiff—failed. (Doc. No. 1, Compl. ¶¶ 18-20.) Defendant instead entered into an agreement with M&G and a different law firm without Plaintiff's involvement. (Id. ¶ 20.) In essence, Plaintiff's argument is that Defendant *intended* to benefit Plaintiff in the two-party contract after a three-party contract expressly involving Plaintiff's affiliate failed. It simply makes no sense that Defendant would enter into the agreement with M&G intending to benefit Plaintiff, when Defendant had just rejected a three-party agreement that would have expressly included Plaintiff.[6]

---

[6] Furthermore, at the time any further advance payment to M&G might have become due, M&G had already entered the Global Co-Counseling Agreement with the Farrin Firm and others, changing the nature of the fee-sharing relationship between the parties, and Plaintiff had already released M&G from any payment obligation under the Fen-Phen Agreement. Those subsequent events confirm that the Plaintiff was not an intended third-

As found by the Magistrate Judge, Plaintiff is—at most—a potential incidental beneficiary. Plaintiff's breach of contract claim should, therefore, be dismissed as a matter of law.

## B. Plaintiff Cannot Recover for Tortious Interference for Defendant's Actions Pursuing a Legitimate Business Interest.

Next, Plaintiff objects to the Magistrate Judge's recommendation that its claims of tortious interference be dismissed for failure to plead sufficient facts to state a plausible claim. In its objections, however, Plaintiff simply rehashes the same conclusory allegations set forth in the Complaint, asking this Court to shift Plaintiff's affirmative burden to plead facts showing malice to Defendant. Because of the requirements of North Carolina substantive law and the accepted pleading standard elucidated in the Twombly line of cases, the Magistrate Judge dismissed these claims as fatally deficient. For the reasons set forth in Defendant's briefs in support in its motion to dismiss, and the reasons detailed below, the recommendation of the Magistrate Judge should be adopted in full and the tortious interference claims dismissed.

To state a valid claim for tortious interference, Plaintiff must allege and plead facts to show:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

---

party beneficiary to the Farrin Co-Counseling Agreement. In any event, any derivative contractual right would have been extinguished at the time that Plaintiff released M&G.

United Labs., Inc. v. Kuykendall, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988).  As

Plaintiff concedes, it was not a party to the Pogust Co-Counseling Agreement.  (Doc. No.

20, Pl.'s Objections at 11.)  Plaintiff nonetheless asks this Court to find that a non-party

to a contract has the right to sue another non-party to the contract for contractual

interference.  Plaintiff has never come forward with, nor could Defendant locate, any

authority extending liability in such a scenario.  Instead, the plain language of the North

Carolina Supreme Court forecloses Plaintiff's argument: a claim for tortious interference

requires "a valid contract between the plaintiff and a third person"—a requirement that

Plaintiff has admitted it cannot satisfy.  See Kuykendall, 322 N.C. at 661, 370 S.E.2d at

387.

Plaintiff's other claim, that Defendant allegedly interfered with the Fen-Phen

Agreement, likewise fails as a matter of law.  Under settled North Carolina substantive

law, Plaintiff bears the burden of pleading—as part of its prima facie case—that

Defendant's conduct was "without justification."  See id. (fourth element of the tort).  As

explained in numerous North Carolina cases, "to establish a prima facie case for tortious

interference with a contract, one must prove . . . [that] the defendant . . . acts without

justification."  Day v. Rasmussen, 177 N.C. App. 759, 762, 629 S.E.2d 912, 914 (2006).

A plaintiff's failure to make a sufficient showing of unjustified conduct at the pleadings

stage is cause for dismissal.  See, e.g., Peoples Sec. Life Ins. Co. v. Hooks, 322 N.C. 216,

221, 367 S.E.2d 647, 650 (1988) (dismissing interference claim on the pleadings).

The Magistrate Judge correctly concluded that Plaintiff had "merely alleged, but not shown, that Defendant acted without justification." (Doc. No. 15, Mem. Op. and Recommendation at 11.) First, Plaintiff simply pleaded no facts in support of its assertion that the Farrin Firm acted with "fraud, malice or oppression, or with a conscious disregard of the rights of Plaintiff." (Doc. No. 1, Compl. ¶ 50.) Because a "formulaic recitation of the elements of a cause of action will not do," <u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. at 1965, Plaintiff failed to carry its burden to plead the "without justification" element required by the North Carolina Supreme Court before a claim for interference will lie.

Second, the complaint and attached exhibits demonstrate that Defendant acted in its own business interests in securing the cooperation and business partnership of the other firms who were parties to the Global Co-Counseling Agreement. As evident from that agreement, the Farrin Firm gained a stake in fees recoverable on behalf of the 6,000 or more claimants held by the Pogust Firm, as well as fees and reputational gains from partnering with established Pigford I class-counsel.

Nonetheless, Plaintiff objects that only parties <u>who are in direct competition with each other</u> may further their own legitimate business interests without fear of incurring liability for interference. This is simply not true under established North Carolina law. As explained in <u>Hooks</u>, "[i]f, however, the defendant is acting for a legitimate business purpose, his actions are privileged." <u>Id.</u> Such "legitimate business purpose" has been found in cases in which the alleged interferer was <u>not</u> a competitor to the plaintiff. <u>See,</u>

16

*e.g.*, Cline v. McCullen, 148 N.C. App. 147, 151, 557 S.E.2d 588, 591 (2001) (finding that the clerk of court was justified in restricting plaintiff's ability to continue his bail bondsman business, even though such actions harmed plaintiff's business).

Here, the agreements attached to Plaintiff's Complaint demonstrate that Defendant has acted at all times (1) in his own business interests, and (2) not out of sheer malice— either one of which alone would be sufficient to require dismissal of Plaintiff's claim. See Cobra Capital, LLC v. RF Nitro Commc'ns, Inc., 266 F. Supp. 2d 432, 439 (M.D.N.C. 2003) (a plaintiff must show that the defendant "acted with malice <u>and</u> for a reason not reasonably related to the protection of a legitimate business interest" (emphasis added and internal quotations omitted)).

The recommended conclusion of the Magistrate Judge—that "Plaintiff's claim fails to sufficiently plead malice or an illegitimate business interest on the part of Defendant"—should therefore be adopted in full, and Plaintiff's claims of interference dismissed.

**C.     Defendant's Alleged Actions Do Not Constitute Unfair or Deceptive Trade Practices Under North Carolina Law.**

Finally, Plaintiff claims that Defendant's alleged conduct underlying the preceding causes of action constitutes unfair and deceptive trade practices.   Under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."   N.C. Gen. Stat. § 75-1.1(a).   To state a claim under the UDTPA, a plaintiff must allege that "(1) defendants committed an unfair

or deceptive act or practice, (2) in or affecting commerce and (3) plaintiff was injured as a result." Phelps-Dickson Builders, L.L.C. v. Amerimann Partners, 172 N.C. App. 427, 439, 617 S.E.2d 664, 671 (2005).

A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive. Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 710 (2001) (citing Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir.1987)). Plaintiff's UDTPA claim is predicated on the very allegations underlying its breach of contract and tortious interference claims—which are insufficient for the reasons found by the Magistrate Judge in the Memorandum Opinion and Recommendation as well as for the reasons discussed above and in Defendant's prior briefs in support of its Motion to Dismiss. As such, Defendant's alleged actions are neither unfair nor deceptive and Plaintiff's UDTPA claim should be dismissed.

In addition to the insufficiency of the underlying allegations, Plaintiff's UDTPA claim also fails because the alleged unfair or deceptive acts do not constitute "commerce" under the statute. "Commerce," as defined under the UDTPA, "includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b) (emphasis added). In order for the learned-profession exemption to apply, a two-part test must be satisfied: (1) the person or entity performing the alleged act must be a member of a learned profession; and (2) the conduct in question must be a rendering of professional services. Reid v. Ayers, 138 N.C. App. 261, 266, 531 S.E.2d 231, 235 (2000)). Under North Carolina law,

the practice of law is a learned profession. Id. "[T]he [learned-profession] exemption applies anytime an attorney or law firm is acting within the scope of the traditional attorney-client role" and acting in the best interest of its clients. Id. at 267, 531 S.E.2d at 236.

As determined by the Magistrate Judge, "[j]ointly representing clients and entering into co-counseling agreements is within the traditional role of an attorney." (Doc. No. 15, Mem. Op. & Recommendation at 15.) Defendant entered into both the Farrin Co-Counseling Agreement and the Global Co-Counseling Agreement—the agreements underlying Plaintiff's UDTPA claim—to promote the best interests of its current and prospective clients. Under the Farrin Co-Counseling Agreement, Defendant and M&G agreed to "share in all duties and responsibilities relevant to the prosecution of the [actions] . . ., including the formulation of strategy, preparation of pleadings and other documents, attendance at courtroom proceedings, as necessary, and all other aspects of the [actions]." (Doc. No. 1, Compl. Ex. C ¶ 6.) Likewise, the parties to the Global Co-Counseling Agreement determined that pooling their resources would serve the interests of their clients. (Id., Ex. D.)

Plaintiff's unreasonably narrow reading of the learned-profession exemption is contrary to the very case on which it relies. In Reid, the court rejected the plaintiff's argument that debt collection was distinguishable from other aspects of an attorney's duties, such as drafting pleadings, negotiating settlements, and preparing contracts. 138 N.C. App. at 267, 531 S.E.2d at 237. In reaching its decision, the Reid court relied on

Cameron v. New Hanover Memorial Hospital, 58 N.C. App. 414, 293 S.E.2d 901 (1982)—a case involving physicians. In Cameron, the "crucial inquiry was whether the administrative functions [of obtaining staff privileges] were a necessary part of the medical services provided," and the court held that they were. Reid, 138 N.C. App. at 267, 531 S.E.2d at 236-27. Applying the same analysis, the Reid court held that "[d]ebt collection along with the collection of attorney's fees incurred as a penalty, is a necessary part of debtor-creditor law." Id. at 267, 531 S.E.2d at 237.

Here, as in Reid and Cameron, the administrative and/or business aspects of the co-counseling agreements cannot be strictly separated from the valuable legal services they enable and facilitate. Such agreements are an integral part of national class action litigation. Not only do such agreements outline the financial arrangement among the participating attorneys, but they also serve to organize and control the legal services provided to clients. The collaboration facilitated by these agreements affords clients with more thorough, efficient, and effective representation. The collective efforts of multiple firms jointly representing clients in related actions falls under the traditional attorney-client role and, therefore, does not constitute commerce under the UDTPA.

## CONCLUSION

For the foregoing reasons, Defendant James S. Farrin, P.C. respectfully requests that the Court adopt in full the Memorandum Opinion and Recommendation, thereby dismissing each of Plaintiff's claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This the 17th day of June, 2010.

/s/ James L. Gale
James L. Gale
N.C. State Bar No. 6160
*Attorney for Defendant James S. Farrin, P.C.*
SMITH MOORE LEATHERWOOD LLP
2800 Two Hanover Square
Raleigh, North Carolina 27601
Telephone:  (919) 755-8763
Facsimile:  (919) 838-3111
Email:  jim.gale@smithmoorelaw.com

/s/ T. Matthew Creech
T. Matthew Creech
N.C. State Bar No. 32638
*Attorney for Defendant James S. Farrin, P.C.*
SMITH MOORE LEATHERWOOD LLP
300 North Greene Street, Suite 1400
Greensboro, NC  27401
Telephone:  (336) 378-5552
Facsimile:  (336) 433-7587
Email:  matt.creech@smithmoorelaw.com

/s/ Matthew N. Leerberg
Matthew N. Leerberg
N.C. State Bar No. 35406
*Attorney for Defendant James S. Farrin, P.C.*
SMITH MOORE LEATHERWOOD LLP
2800 Two Hanover Square
Raleigh, North Carolina 27601
Telephone:  (919) 755-8759
Facsimile:  (919) 838-3122
Email:  matt.leerberg@smithmoorelaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **RESPONSE TO PLAINTIFF'S OBJECTIONS TO RECOMMENDATION** was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to Plaintiff's counsel of record.

This the 17th day of June, 2010.

/s/ T. Matthew Creech
T. Matthew Creech
N.C. State Bar No. 32638
*Attorney for Defendant James S. Farrin, P.C.*
SMITH MOORE LEATHERWOOD LLP
300 North Greene Street, Suite 1400
Greensboro, NC 27401
Telephone: (336) 378-5552
Facsimile: (336) 433-7587
Email: matt.creech@smithmoorelaw.com